BRYON R. BREWSTER, Respondent, *v.* J. & J. ROGERS COMPANY, Appellant.

RIPARIAN RIGHTS — DAMAGES CAUSED BY INCREASING FLOW OF RIVER WHICH IS A PUBLIC HIGHWAY FOR THE FLOATING OF LOGS — STATUTORY REMEDY CUMULATIVE, NOT EXCLUSIVE. The owner of farms through which runs a river, on which he owns and maintains a dam and saw mill, and which river is, and for years has been, a public highway for the purpose of floating logs, timber and lumber, is not confined to the remedy by appraisal afforded by the statutes (L. 1880, ch. 533, as amd. by L. 1897, ch. 483; Navigation Law, L. 1897, ch. 592, art. V) for damages to his mill and farms caused by the increase of the natural volume and flow of the river by water collected and stored by a dam and discharged therefrom into the river in large quantities for the purpose of floating logs down the river, but can recover for such damages in an action at law, since the statutes, if considered as authorizing the condemnation of property rights, would be unconstitutional, because the security therein provided for the

compensation of landowners is arbitrary, and no opportunity is afforded them to show that it is inadequate in amount or insufficient in character; and, also, because they do not provide that the rights and easements necessary for the use of rivers and streams as public highways for the purpose of floating logs, timber and lumber shall be acquired by the public for the use of the public, but that each person who uses any river or stream as such highway shall pay only for his own use thereof, thereby acquiring for a particular time merely a private easement in favor of a private person; they must, therefore, be construed as merely granting an additional, not an exclusive, remedy.

*Brewster* v. *Rogers Co.,* 42 App. Div. 343, affirmed.

(Argued October 23, 1901; decided December 10, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 17, 1899, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Richard Lockhard Hand* for appellant. All use of the river, proved in this action, has been a lawful exercise of the right of eminent domain, fully authorized by statute, and this action, therefore, will not lie. (L. 1880, ch. 533; *Matter of Burns,* 16 App. Div. 507; *De Camp* v. *Thomson,* 16 App. Div. 528; *Menges* v. *City of Albany,* 56 N. Y. 374; *Smith* v. *Helmer,* 7 Barb. 416; *Matter of St. Lawrence & A. R. R. Co.,* 66 Hun, 306; *Cherokee Nation* v. *S. K. Ry. Co.,* 135 U. S. 641; *Odell* v. *De Witt,* 53 N. Y. 643.) The act of 1893 (Ch. 363) declaring this river a " public highway " is constitutional and valid. (*Matter of Burns,* 155 N. Y. 23.) The court will take judicial notice of these acts of the legislature. (*Browne* v. *Scofield,* 8 Barb. 239; *Cole* v. *Mahoney,* 67 How. Pr. 226; *Bretz* v. *Mayor, etc.,* 4 Abb. [N. S.] 258; *Williams* v. *People,* 24 N. Y. 405; *Matter of U. S. P. Line Co.,* 16 App. Div. 188; *Heiser* v. *Mayor, etc.,* 104 N. Y. 68; *Matter of N. Y., L. E. & W. R. R. Co.,* 110 N. Y. 374; *Jessup* v. *Carnegie,* 80 N. Y. 441; *Palmer* v. *Foley,* 45 How. Pr. 110; *Selover* v. *Coe,* 63 N. Y. 438.) No measure of damages is

given by the evidence in this case, as it does not render possible any discrimination between injuries alleged to have resulted from "flooding" pulpwood and those due to floods, frost, ice and the like; nor between those occasioned before, and those occasioned since, any specified year. (*Wallace* v. *Drew*, 59 Barb. 413; *Leeds* v. *M. G. L. Co.*, 90 N. Y. 26; *Chipman* v. *Palmer*, 77 N. Y. 51.) The stream in question being a highway for the purpose of floating logs, such use of it does not give any right of action to a riparian owner, unless some negligence or willful wrong is involved. (*Outterson* v. *Gould*, 77 Hun, 429; *Bullard* v. *S. V. M. Co.*, 77 N. Y. 525.) The recovery here is not upon any cause of action alleged in the complaint and cannot be sustained. (*Graham* v. *Read*, 57 N. Y. 681; *Barnes* v. *Quigley*, 59 N. Y. 265; *Southwick* v. *F. Nat. Bank*, 84 N. Y. 420; *Hodges* v. *Friedheim*, 25 App. Div. 608; *Kress* v. *Woehrle*, 23 Misc. Rep. 472.) No cause of action was proved in respect to the alleged injuries to the mill property. (*Baldwin* v. *U. S. T. Co.*, 45 N. Y. 744; *Slavin* v. *State*, 152 N. Y. 45; *N. F. P. Co.* v. *Lee*, 20 App. Div. 217; *Brown* v. *Symes*, 83 Hun, 159; *Lestienne* v. *Ernst*, 5 App. Div. 373; *Fuller* v. *Kemp*, 138 N. Y. 231.) All pretended claims of the plaintiff, prior to the spring of 1898, are barred by the expiration of one year. (L. 1880, ch. 533, § 5; L. 1897, ch. 592, § 72.) The objection that the use here made is private and not public, is wholly baseless. (*Matter of Burns*, 155 N. Y. 23.) The contention that compensation must precede use is erroneous. (*People* v. *A. R. Co.*, 160 N. Y. 225.) The court below erred in declaring the law of 1880 unconstitutional, because it fails, as alleged, to provide compensation to the owners of the bed of the stream. (*De Camp* v. *Dix*, 159 N. Y. 436.)

*Francis A. Smith* for respondent. The remedies provided by the statutes, either of 1880 or of 1897, are not exclusive. If applicable at all, they afford only an additional method of ascertaining the amount of damages. (L. 1880, ch. 533,

§§ 3–5, 10; L. 1893, ch. 363; L. 1897, ch. 483; 3 Birdseye's R. S. 3045, 3046; *Crittenden* v. *Wilson,* 5 Cow. 165; *F. T. Road* v. *Coventry,* 10 Johns. 389; *Wetmore* v. *Tracy,* 14 Wend. 250; *Colden* v. *Eldred,* 15 Johns. 220; *Stafford* v. *Ingersol,* 3 Hill, 38; *Renwick* v. *Morris,* 3 Hill, 621; 7 Hill, 575; *W. & W. Turnpike* v. *People,* 9 Barb. 171; *Selden* v. *D. & H. C. Co.,* 24 Barb. 362; *Porter* v. *Mount,* 41 Barb. 561.) If the statute confers the right of eminent domain, it is in violation of the Constitution, because it assumes to take private property for private use. (*Matter of S. R. C. R. Co.,* 128 N. Y. 416.) The act of 1897 is invalid for the further reason that it does not provide for the payment of compensation before the exercise of the right to run logs by the defendant. (*Dusenbury* v. *M. Tel. Co.,* 11 Abb. [N. C.] 440; *De Camp* v. *Thomson,* 16 App. Div. 528; Lewis on Em. Dom. § 457; Mills on Em. Dom. § 126; Cooley on Const. Lim. [6th ed.] 693; *Sanborn* v. *Belden,* 51 Cal. 266; *Sage* v. *City of Brooklyn,* 89 N. Y. 189.) The judgment should be sustained upon the broader ground that neither of the statutes of 1897, nor the statute of 1880, assuming that the latter applies to this case, gives any power or warrant to the defendant to increase by a storage dam the natural flow or volume of water in the stream below it. (*Matter of Thomson,* 86 Hun, 405; *Matter of Burns,* 155 N. Y. 23.) The rule of damages followed by the trial justice was correct. (*Hartshorn* v. *Chaddock,* 135 N. Y. 116.) A storage dam erected by a private corporation and used exclusively by it and another of like character, to the exclusion of the public, is a private and not a public use. (*Matter of N. F. & W. R. Co.,* 108 N. Y. 375; 121 N. Y. 319; *Matter of S. R. C. R. Co.,* 128 N. Y. 408.) The question whether the use is public or private is a judicial one to be determined by the courts. (*W. W. M. Co.* v. *Shanahan,* 128 N. Y. 357; *People ex rel.* v. *Bd. of R. R. Comrs.,* 160 N. Y. 216.)

CULLEN, J. The plaintiff was the owner of two farms in the county of Essex through which ran the west branch of

the Ausable river, on which river he owned and maintained a dam and a saw mill. Further up the river the defendant owned large tracts of timber land. The complaint alleged that in the years 1896, 1897 and 1898 the defendant floated a great number of logs down said stream ; that for the purpose of floating said logs the defendant accumulated great quantities of water behind dams erected by it on tributaries to said stream, and from time to time discharged into it the water so accumulated in great volume, far beyond the natural flow of the river, causing the river to overflow its banks, injuring both the plaintiff's dam and his adjacent uplands. The plaintiff asked judgment for his damages and for an injunction restraining the defendant from continuing its operations on the stream. The defendant answered, denying the injuries alleged in the complaint, and averring that the west branch of the Ausable river was and for years had been a public highway for the purpose of floating logs, timber and lumber. The answer also set forth that the defendant had duly executed and filed a bond with sureties in the sum of five thousand dollars as indemnity against all damages that might be caused to any property by its use of said river as a highway ; that the damages sustained by the plaintiff had not been ascertained or appraised by commissioners, as required by the statute, and that the plaintiff's cause of action had not accrued within one year. The trial court found that the defendant had stored water and then discharged it into the stream as alleged in the complaint, increasing the natural volume and flow of the river, whereby the plaintiff's mill and farms were damaged to the amount of five hundred dollars. The court held that the defendant had the right to run the logs through the stream as the latter was a public highway for such purpose, but that it had not the right to increase the natural flow of the stream to the substantial injury of the plaintiff's premises ; that the statutory remedy for appraisal of damages was not exclusive and did not destroy the plaintiff's right of action. On this decision judgment was rendered for the damages it was found that the plaintiff had sustained, but no injunction was granted. The

judgment has been affirmed by the Appellate Division, and the defendant now appeals to this court.

The Ausable river was, by chapter 363 of the Laws of 1893, constituted and declared to be a public highway. This act did not provide for compensation to the owners of the bed of the stream. • But at the time there was a general statute (Chap. 533, Laws of 1880) which authorized and regulated the use of rivers recognized by law or use as public highways and provided for compensation to the owners of property damaged by such use. The learned Appellate Division was of opinion that this statute was not broad enough to provide for compensation to the owner of the bed of the stream. We do not think it necessary to pass upon that question, as the trial court found as a matter of fact that the stream was a highway for running logs, which it would be if, in its natural state, it was capable of transporting logs or rafts. (*Morgan* v. *King*, 35 N. Y. 454; Gould on Waters, §§ 53, 54, 107.) But though a highway no one would have the right to store water and then suddenly discharge the accumulation so as to increase the natural volume of the stream and overflow or wash away the adjacent banks. (*Noonan* v. *City of Albany*, 79 N. Y. 470; *McCormick* v. *Horan*, 81 N. Y. 86.) The erosion of the banks would be in the nature of a trespass on the property rights of the owner of the soil, and for such trespass (or private nuisance, if not technically a trespass) the plaintiff would unquestionably be entitled to maintain this action unless, as contended by the counsel for the appellant, he is precluded therefrom by the statute of 1880, referred to, or by the "Navigation Law." (Chap. 592, Laws of 1897, art. 5.)

These statutes are substantially alike, and it will be necessary to refer in detail to the provisions of that of 1880 alone. Section 3, as amended by chapter 483 of the Laws of 1897, authorizes any person desirous of floating or running lumber, logs or other timber down any river recognized by law or use as a public highway, to construct a chute or apron in any dam across it, to reconstruct any booms or other works already constructed in the river and to " construct such other piers, booms

or other works as may be necessary for the passage of lumber, logs or other timber over and through the channels of said rivers, doing no injury or damage to the owner or occupant·of such boom, dam or other works, or to the owner or occupant of any land on which such piers, booms, dams or other works may be constructed, or lands flooded thereby, and paying to such owner or occupant such damages as he or they may sustain by reason of the construction of·such piers, booms or other works, or the flooding of lands thereby, and paying also all damages and loss that may be occasioned or done to any and all property, public or private, in or upon said river or its banks, by reason of the floating of logs or lumber, or by reason of the removal of obstructions in the floatable channel of said river, and in case the amount of such damage cannot be amicably arranged by the parties interested, the same shall be appraised by three commissioners, to be appointed by the Supreme Court of the judicial district wherein the property is situated, on the application of any person interested in the appraisal of such damage, on three days' notice, in writing, to the opposite parties of the time and place of making such application. * * * the intent of this statute being to provide compensation to the riparian owner in all cases where rivers and streams have been declared to be public highways for the purpose of floating logs where no compensation has been provided therein to the riparian owners, and to those having vested rights upon said streams and rivers." Section 5 provides that any person making claim for damage arising under the statute shall apply within one year after the occurrence of the same, or be debarred from recovering the same. Section 10 requires any person intending to float or·run lumber on any river to first execute and file a bond to the People, with sufficient sureties in the sum of five thousand dollars, to be approved by the county judge in the county or counties in or through which the river or rivers proposed to be used flow, and that any person suffering loss or damage may maintain an action in his own name against the parties executing the bond. The claim of the learned counsel for the appellant is that the

remedy given by the statute to the injured property owners is exclusive and that the plaintiff was required to apply for an assessment of his damages before the commissioners, appointed as prescribed by the statute, within one year from the time of their occurrence or be precluded from any recovery. The general rule is that if a new right be given by statute and a remedy for the invasion thereof be prescribed the statutory remedy is exclusive, but if there be an existing right and a common-law right of action for its violation, then the statutory remedy is only additional or cumulative. (*Crittenden* v. *Wilson*, 5 Cowen, 165; *Dudley* v. *Mayhew*, 3 N. Y. 9; *McKee* v. *D. & H. C. Co.*, 125 N. Y. 353; *Reining* v. *N. Y., L. & W. Ry. Co.*, 128 N. Y. 157.) In cases such as the one before us this is necessarily the rule. The plaintiff's property rights had been violated. The legislature could not deprive him of the right to recover damages for such violation, and his claim for damages could not be made the subject of condemnation proceedings. (*Matter of Townsend*, 39 N. Y. 171.) The only theory on which the plaintiff's recovery can be successfully assailed is that the acts for which the defendant is sued were done in the exercise of the power of eminent domain granted by the state. If, under the provisions of the statute of 1880 the property rights of the plaintiff were lawfully appropriated to a public use, then he never had any common-law right of action for trespass or nuisance, for there was no trespass or nuisance.

But the statute cannot be upheld as a constitutional exercise of the power of eminent domain. It was settled early in the history of this state that when private property is taken for public use, compensation need not necessarily precede the appropriation; but it was also settled that where payment does not precede appropriation, it must be secure and certain. (*Bloodgood* v. *Mohawk & Hudson R. R. Co.*, 18 Wend. 9.) The responsibility of the state or of one of its municipal corporations or political divisions is deemed sufficient, but a fund to be raised solely from a local assessment district of limited area "is not a sure and adequate provision, dependent upon

'no hazard, casualty or contingency whatever,' such as law and justice require to meet the constitutional requirement." (*Sage* v. *City of Brooklyn*, 89 N. Y. 189.) It is clear, therefore, that the property owner cannot be relegated to the doubtful responsibility or solvency of a private corporation or of an individual. (*Bloodgood* v. *Mohawk & Hudson R. R. Co.*, *supra.*) Nor is the statutory direction that the parties seeking to use a river shall first give a bond a sufficient compliance with the constitutional requirement. The statute arbitrarily fixes the amount of the bond at five thousand dollars in all cases, regardless of what may be the value of the property rights appropriated or the amount of the damage inflicted, which may far exceed that sum. The application for the approval of the bond is *ex parte,* and no landowner has any opportunity to be heard as to the sufficiency of the sureties. But one bond is required, no matter how many owners there may be whose lands and properties are invaded, and once given it seems to authorize the indefinite and continued use of the river. No such provision can be regarded as affording adequate security for compensation. The old General Railroad Act, in cases where the title of the company to any part of its road proved defective, empowered the company by an order made in condemnation proceedings to continue in possession of the land upon giving sufficient security. The constitutionality of this provision was upheld by the Supreme Court. (*Matter of St. Lawrence & A. R. R. Co.*, 66 Hun, 306.) We think the case was properly decided, but it is clearly distinguishable in principle from that before us. There the amount and character of the security was determined in a judicial proceeding in which the landowner appeared and was heard. In *Norfolk & New Brunswick H. Company* v. *Arnold* (143 N. Y. 265) the appeal was from an injunction order staying the prosecution of actions against the defendant for certain royalties until the final determination of one action between the same parties. The defendant claimed that by not allowing her to prosecute her claims as they became due, her constitutional rights were violated. This court held that there

was no analogy between a stay of the collection of debts enacted by the legislature and one granted by the court in an action brought for the purpose, because the latter was granted, not by arbitrary fiat, but for cause in a judicial proceeding in which the party had an opportunity to be heard. The difference between the railroad case and the one before us is the same in character and principle as that pointed out by Judge EARL in the case cited. The security provided by the statute is arbitrary, and no opportunity is afforded the landowner to show that it is inadequate in amount or insufficient in character.

There is a further objection that goes to the whole character of the statutory scheme considering the act as one conferring the power of eminent domain. The scheme is that the lands or the easements therein, necessary for highways created by the law, shall not be permanently acquired by the public, but that each person who uses the highway shall make compensation to the landowner for such use. We admit that the temporary appropriation of property or its appropriation for a specified time may be authorized, and that it is not necessary that the land should be acquired in fee. We also admit that property can be held by no tenure which will exempt it from a future exercise by the state of the power of eminent domain. But these principles will not uphold the legislation before us. It is elementary law with us that private property can be taken only for public purposes, not for private use. To this rule two exceptions are made by the present Constitution of this state, neither of which is material here. Under this statute every one using the river pays only for his own use. It is contended that the use is public because every one is free to make use of the river. The statute does give this privilege to every one. But this fact does not determine the question whether the plaintiff's land has been taken for private or for public purposes. When was the plaintiff's land appropriated? The appellant will not contend that the enactment of the statute had this effect. If it had, then plainly the statute is bad, for no one might use the river and the plaintiff might never

get compensation. If not at that time, then the appropriation must have occurred when the defendant commenced its operations in the stream. Assuming that the statute had provided sufficient security for compensation, for what under the statute would the commissioners have awarded damages to the plaintiff? Solely for the defendant's own use of the river. It is true that some of the work done by the defendant might be permanent in its effect and thus inure to the benefit of persons who might subsequently use the stream. Nevertheless, each person using it is to pay for his own use. Therefore, an easement acquired at any particular time in the plaintiff's lands would be merely an easement in favor of a private person. What the statute grants to every person is not the right to partake of or share in the easement acquired by another, but the right to acquire a new and distinct easement of the same character. No one would seriously assert that a legislative enactment which authorized A to enter upon the farm of B without the latter's consent, whenever he saw fit, for the purpose of play, exercise or recreation, upon making compensation therefor to B, was constitutional. It would not help the matter if the statute gave every person in the community the same privilege in B's farm; the statute would still be unconstitutional. Yet that farm could unquestionably be taken as a park or common to be enjoyed by the community at large as a place for recreation, amusement or health. The distinction in principle between the two kinds of legislation lies just here. In the first case the easements sought to be acquired are private, and though every one might acquire such an easement, still they would remain in their aggregation of the same character as each one was in its severalty, that is to say, merely a number or bundle of private easements. As the easements would be private, the purpose for which they were acquired would be private. In the second case the easement would be in the public and, therefore, the purpose for which it is taken public. This is also true where the land, instead of being acquired by the state or by a municipality, is taken by a *quasi* public corporation such as a rail-

road company or a turnpike company. The purpose is equally
public in such cases. It is true that only those persons that
pay the company for the privilege have a right to use the
road. But by such payment there is no new appropriation of
the land of the private owner. The passenger on the railroad
or the traveler on the turnpike merely shares in the benefit of
the original taking of the land by the company, which taking
was broad enough to include the use of the land by all of the
public that might choose to avail themselves of it. If it had
not at its inception been comprehensive to this extent, the
landowner could not have been deprived of his property.
Throughout this discussion I have always referred to the
interest acquired by the exercise of the power of eminent
domain as an easement. This has been merely for conveni-
ence and to avoid prolixity of expression. Of course, we all
know that oftentimes the fee itself is condemned.

Our decision in the *Matter of Burns* (155 N. Y. 23) is
entirely consistent with the views I have expressed. In that
case the proposition decided was that the constitutional
inhibition against the enactment of private or local bills " for
laying out, opening, altering, working or discontinuing roads,
highways or alleys" did not apply to streams or rivers.
(Chap. 338, Laws of 1896.) The statute in that case was not
subject to the objections which we have considered in reference
to the law of 1880. The ascertainment and payment or tender
of compensation were made a prerequisite to the use of the
stream. As I construe the statute, compensation was to be
assessed, not for the particular use by some individual, but for
the permanent conversion of the brook into a public highway.
A perusal of the petition in the case will show that this was
the construction adopted by the applicant. As after the pay-
ment of the damages the stream was to become a public high-
way, subject to use as such by the public, it was of no conse-
quence that the expense of opening the highway was borne
by a private individual actuated either by public spirit or
personal interest.

For these reasons we think the statute would be unconstitu-

tional if considered as authorizing the condemnation of the plaintiff's property rights, and, therefore, it must be construed as merely granting an additional remedy.

The judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT and WERNER, JJ., concur; LANDON, J., not sitting.

Judgment affirmed.