## STATE WATER SUPPLY COMMISSION v. CURTIS.

(Supreme Court, Appellate Division, Fourth Department. March 18, 1908.)

1. EMINENT DOMAIN—COMPENSATION—NECESSITY AND SUFFICIENCY—NECESSITY OF PAYMENT BEFORE TAKING.

In proceedings to condemn land, payment to the owner must always precede, or be concurrent with, the delivery of possession, unless the statute authorizing the taking provides otherwise, and makes a definite and certain remedy available for the recovery of compensation by the owner; but, where payment is to be made before the appropriation, the efficiency of the remedy provided is immaterial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 188.]

2. SAME—SUFFICIENCY OF STATUTORY PROVISIONS FOR COMPENSATION.

Laws 1904, p. 1872, c. 734, creating the River Improvement Commission, the powers of which were transferred to the State Water Supply Commission by Laws 1906, p. 1016, c. 418, authorized the commission to regulate the water courses in the state, and empowered it to enter on land necessary for that purpose, and, upon failure to agree with the owners thereof upon compensation, provided that title shall be acquired in accordance with Condemnation Law, Code Civ. Proc. tit. 1, c. 23, section 3371 of which provides that after the final order confirming the proceedings, and on payment of compensation, plaintiff shall be entitled to possession of the land condemned, and section 3373 of which provides that the owner shall deliver possession to plaintiff upon payment of compensation, etc. *Held*, that Laws 1904 were not unconstitutional on the ground that no adequate provision was made for compensation, since by the terms of the act land could not be appropriated until compensation was made.

McLennan, P. J., dissenting.

Submission of controversy upon admitted facts pursuant to Code Civ. Proc. §§ 1279, 1281, by the State Water Supply Commission of the state of New York against Henry B. Curtis to determine the constitutionality of a statute. Judgment for plaintiff determining that the act is constitutional.

The determination desired involves the constitutionality of chapter 734, p. 1872, Laws 1904. The act is a general one, creating a permanent commission with authority to regulate the flow of water courses in the state "in aid of the public health and safety." The body vested with the power was designated the "River Improvement Commission." By chapter 418, p. 1016, Laws 1906, the powers of this commission were transferred to the State Water Supply Commission, a body which had been created by chapter 723, p. 2022, Laws 1905.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Lockwood R. Doty, for plaintiff.
John F. Connor, for defendant.

SPRING, J. The act delegating the authority referred to endows the commission with plenary power to acquire property by condemnation to enable it to carry out the provisions of the act, and the contention of the defendant is that it is in derogation of the Constitution, in that there is no certain provision for the payment of adequate compensation for the land which may be taken. The act provides for the com-

mencement of the proceeding by petition to the commission, which must first determine whether the regulation of the water course is of sufficient importance to call for the intervention of the state. If it determines that question in favor of the petitioner, the act provides for preliminary plans and surveys, and the filing of a map designating the names of the owners whose lands will be affected; also a statement is to be made showing the cost of the proposed improvement, the amounts to be chargeable to the various political divisions affected, and the individual properties collectively to be benefited thereby "expressed in decimals." Hearings are then required upon notice to the parties interested with these tentative plans and statements as the basis, and ultimately the commission must determine the precise district to be benefited by these improvements, with the cost thereof, and the same are to be apportioned by the commission. A final order is to be made by the commission, which must be filed as provided in the act, and no improvement can be undertaken until the same has been approved by the Legislature and the plan outlined authorized by that body. The commission must then advertise for bids and enter into a contract or contracts for the performance of the improvements. The commission is authorized to enter upon any land deemed necessary for the purposes of the act. If it cannot agree with any owners upon compensation, title shall be acquired in accordance with the condemnation law (Title 1, c. 23, Code of Civil Procedure), and certified copies of the final order provided for in section 3371 and of the judgment authorized by section 3373 of the Code of Civil Procedure are expressly directed to be filed in the State Comptroller's office, who issues his warrant for the payment of the sum awarded.

As already indicated, the cost of the improvement is directed to be apportioned by the commission "between the respective counties, towns, cities, villages and individual properties which according to their determination made as hereinbefore provided, are benefited by said improvements." If any part of the cost of the improvement is not properly assessable to the localities or to the individuals "as not in the nature of a local improvement," such part "shall be certified by the state commission to the Legislature as a state charge." The commission may determine whether the assessments imposed are to be in one assessment, "or in annual assessments, not exceeding twenty in all." In the proceeding for the ascertainment of the apportionment hearings must be had upon notice to all political divisions and persons interested, and the mode of procedure is contained in section 9 of the act. Thereafter a final detailed statement must be made of the cost and expense of the improvement and of its apportionment (section 10), and the manner of raising the amounts in accordance therewith by assessment and tax from the localities and the properties benefited are set out in that section; and "the amounts apportioned shall be and remain charges against the several municipalities and liens upon the several parcels of property charged therewith, until paid or otherwise removed, superior in force and effect to all other liens except unpaid general taxes." The moneys are to be paid to the county treasurer, and by that official to the Comptroller of the State, to be deposited to the credit of the river

improvement fund. The commission is authorized to issue bonds to meet the cost of the improvement, and also certificates of indebtedness to provide for expenditures incurred before the proceeds arising from the sale of bonds are obtainable. There is no authority in the act for possession or the transfer of title preceding payment to the landowner who is deprived of his land. In fact, the proceedings to acquire title against an unwilling owner is in pursuance of the condemnation law. The final order in those proceedings, in accordance with section 3371 of the act, directs the compensation to be paid, and, "upon payment of such compensation," the plaintiff is entitled to the possession of the land condemned, and the state is vested with the title. The judgment is that prescribed by section 3373, which also requires payment to precede delivery of possession.

The statement of facts shows that a petition was presented to the plaintiff alleging that Canaseraga creek runs through the county of Livingston, and by reason of its tortuous course is "a menace to public health and safety," and asked that the flow of the water in such creek be regulated. In compliance with such petition, the said plaintiff determined that the improvement asked for was necessary, and all the proceedings required by chapter 734, p. 1872, Laws 1904, have been had, terminating in the final order which was approved by the Legislature (chapter 195, p. 278, Laws 1907), and said act authorized and designated the improvement to be made. The lands to be benefited have been ascertained, embracing 190,720 acres, and a contract has been entered into for the performance of the work necessary for the improvement designed. The defendant owns a farm liable for assessment in the making of such improvement, and about four acres of the same are necessary to be taken in the regulation of said water course. The statement of facts shows that the commission was unable to agree with the defendant upon the compensation to be paid for the property to be apportioned, and it commenced proceedings in pursuance of chapter 23, tit. 1, Code Civ. Proc., to acquire title thereto by condemnation. The said proceedings have been discontinued by agreement of the parties "for the purpose of presenting this written submission thereof to this court for its determination."

The plaintiff contends that the public use requires the condemnation of the property of the defendant, while the defendant contends that chapter 734, p. 1872, Laws 1904, is unconstitutional, alleging that no adequate provision is made insuring compensation for the land sought to be taken; and that is the sole question submitted to the court for determination. In proceedings to acquire land by condemnation, payment must always be precedent to or concurrent with the delivery of possession, unless the statute authorizing the taking provides otherwise, and makes a definite and certain remedy available to the person who has been deprived of his land, so that compensation therefor will be unmistakable. One of two things is absolutely indispensable in order to uphold a law which deprives a person of land against his will—either that adequate compensation for the land to be appropriated must be made before possession or title is acquired, or that payment thereof must be secured beyond a doubt to the owner. In the

present case it seems to be clear that the import of the statute is to postpone possession and the acquisition of title until the owner has been paid therefor. That is the essence of the proceeding under the condemnation law, and that is the only remedy available to the plaintiff to obtain title or possession of the property against the protest of the owner whose land is required. The act does not in terms provide that the plaintiff may appropriate or go in possession of the land for the purpose of the improvement before it has compensated the owner for the same. It relegates the plaintiff to the condemnation law to acquire the land of an owner unwilling to convey, implying that the divesting of title and the payment for the premises of which the owner is deprived must be concurrent.

There are many cases cited upon the proposition that compensation must be certain. In every one of these cases, so far as I have been able to discover, possession of the land was given before it was paid for, and no adequate remedy to secure payment existed. In Sage et al. v. City of Brooklyn, 89 N. Y. 189, a leading case on the subject, the Legislature authorized the widening of a street in the city of Brooklyn, and the cost of the improvement was apportioned upon the property benefited. The plaintiffs' land was taken, and an award made to them therefor. This land was appropriated, but they were not paid. The sum raised by assessment upon a restricted district was insufficient for the cost of the improvement, and the entire fund was exhausted. The city was sued, and the court held it was liable to the plaintiffs for the awards made to them. The act in that case authorized the commissioners to take possession of the property required, and remitted the owners to a remedy which was inadequate and uncertain if limited to the assessment district. The pith of the controversy was whether the city of Brooklyn was liable to compensate the plaintiffs, and the court held that the act authorizing the widening of the street imposed upon the city the duty of recompensing the plaintiffs for the land taken, and for that reason sustained its validity. In Mitchell v. Village of White Plains, 62 Hun, 231, 16 N. Y. Supp. 828, commissioners were given authority to take property by right of eminent domain and to acquire possession of the same, and the owners' compensation for the land taken was derived from assessment "upon the strips of land within five hundred yards from either side" of the avenue laid out. Again, possession of the land was allowed, and no safe remedy was insured to the owner for the award to him. The distinction is recognized in Brewster v. Rogers Co., 169 N. Y. 73, 62 N. E. 164, 58 L. R. A. 495, in the language of Chief Judge Cullen at page 80 of 169 N. Y., at page 166 of 62 N. E. (58 L. R. A. 495):

"It was settled early in the history of this state that, when private property is taken for public use, compensation need not necessarily precede the appropriation; but it was also settled that, where payment does not precede appropriation, it must be secure and certain."

Where payment is to be made for private property taken for a public use before the appropriation of the same, the question of the efficiency of the remedy is not important. The cases discussing the uncertainty of the fund or the remedy have no relevancy to a case

109 N.Y.S.—32

where the owner can retain possession and title undisturbed until the award made to him has been paid. Possibly, if it were clear that the statute had not vested the plaintiff with authority to raise sufficient money to carry on the improvement proposed, the courts might interfere to prevent the consummation of the plan.

The statute under consideration does make it reasonably certain that adequate funds will be provided to meet the cost. The territory benefited is definite, and the plaintiff, in all probability, will be able to dispose of bonds secured by the assessment upon the lands and with a designated part of the cost chargeable to the towns through which the water course runs. The title to the land is taken in the state. The commission delegated with making the improvement is a state organization, and enters upon the work in pursuance of the specific authority of the state Legislature. The funds are in the custody of the Comptroller of the state, so that the state itself is in effect committed to the performance of the work from its inception. In any event, if any uncertainty exists as to the ability of the commission to complete fully the improvement, the landowners are not affected because their lands must be taken and paid for before the work commences. Apparently the plaintiff is not endeavoring to acquire title to or go into possession of private property without paying for it anterior to its acquisition. In the petition served upon the defendant to condemn his land the plaintiff asked to obtain title to his premises "for the public use so specified upon making compensation therefor" pursuant to the condemnation law. The defendant was tendered and refused the sum of $225, which it is stipulated is the value of the land to be taken.

I think that judgment should be rendered in favor of the plaintiff, determining that the act in question is constitutional. So ordered. All concur, except McLENNAN, P. J., who dissents in an opinion.

McLENNAN, P. J. (dissenting). The question presented involves the constitutionality of chapter 734, p. 1872, Laws 1904. Under and by virtue of said act the plaintiff claims the right to acquire by condemnation the title to certain lands of the defendant as for a public use. Such right is denied by the defendant, principally upon the ground that the act makes no sure and adequate provision for the payment of a just compensation for the lands to be taken, and is therefore unconstitutional. The plaintiff is a commission created and existing under and by virtue of chapter 723, p. 2022, Laws 1905. Under the provisions of chapter 734, p. 1872, Laws 1904, certain public officers were constituted a commission and designated as the "River Improvement Commission," and were clothed with the powers prescribed in the act last mentioned. By chapter 418, p. 1016, Laws 1906, such powers and duties devolved upon the plaintiff, so that it is only necessary to consider the provisions of the act. Chapter 734, p. 1872, Laws 1904. The purpose of such act is to provide a means to regulate the flow of certain water courses of the state in aid of the public health and safety, and it is sought, under the powers conferred by such act, to apply its provisions to a stream in the county of Livingston known as "Canaseraga creek," which flows in a generally northwesterly course from the

town of North Dansville, through the towns of Sparta, West Sparta, Groveland, and Mt. Morris, all in said county, and which enters the Genesee river at a point upon the line dividing the two last-mentioned towns, a distance in a direct line of about 15 miles, and following the course of the stream a distance of about 45 miles. The watershed embraces nearly 200,000 acres. There are 55 streams emptying into the creek from both sides, which traverses the valley, embracing an area of 13,000 acres of flat land, and through a part of which the creek is above the level of the land on either side. The situation of the creek, as it at present exists, is such as to overflow at flood times a large area of valuable lands in such county, and it appears that the result of such overflow is not only a serious detriment to the landowners, but seriously impairs the public health in the locality. As I understand it, it is practically conceded that the purposes of the act in question were legitimate, and that it was competent for the state to exercise its authority in the premises, and to abate or improve the condition which existed in the territory referred to. Assuming that I am right in thus concluding, further reference to the conditions which exist and the necessity for their improvement need not be made. But, in order to carry out the purpose of the state thus declared by the act in question, it became necessary to appropriate the land of the defendant, and others similarly situated, and the act provides that such taking may be had or appropriation made under the provisions of the condemnation law, so called. So far, assuming that the purpose of the law is legitimate and within the province of the state to provide for, there can be no criticism of the act, and, indeed, none is made by the defendant upon that assumption.

He (the defendant) challenges the constitutionality of the act solely upon the ground that no provision is made for a sure and adequate compensation to be paid to him for his property, which is concededly to be taken and requisite for carrying out the purposes of the act. If the payment of the compensation which may be awarded to the defendant is not made sure and certain by the provisions of the act, I understand that it is unconstitutional, and therefore void. In the case of Sage v. City of Brooklyn, 89 N. Y. 190, Judge Andrews, writing the opinion for the court (page 195), said:

"It is so axiomatic that it is laid up as one of the principles of government that provision for compensation is an indispensable attendant upon the due and constitutional exercise of the power of depriving an individual of his property under the right of eminent domain. Gardner v. Newburgh, 2 Johns. Ch. 168, 7 Am. Dec. 526. * * * If such provision is not made, then, as was said by Nelson, C. J., 'the law making the appropriation is not better than blank paper.' People ex rel. Utley v. Hayden, 6 Hill, 359. It is, I think, a plain proposition that a law authorizing the taking of a man's land, and remitting him for his sole remedy for compensation to a fund to be obtained by taxation of certain specified lands in a limited district, according to benefits, is not a sure and adequate provision, dependent upon 'no hazard, casualty or contingency whatever,' such as law and justice require to meet the constitutional requirement. The pledge of the faith and credit of the state, or of one of its political divisions, for the payment of the property owner, accompanied with practical and available provisions for securing the application of the public faith and credit to the discharge of the constitutional obligation of payment, has been held to be a certain and sufficient remedy within the law. But a remedy for compensation, contingent upon the realization of a fund

from taxation for benefits within a limited assessment district, does not meet the constitutional requirement."

See, also, Brewster v. Rogers Co., 169 N. Y. 73, 62 N. E. 164, 58 L. R. A. 495; Chapman et al. v. Gates, 54 N. Y. 132, 146.

In the case of Mitchell v. Village of White Plains, 62 Hun, 231, 16 N. Y. Supp. 828, the provisions of chapter 552, p. 1125, Laws 1868, which assumed to authorize the opening of a roadway from Mamaroneck to White Plains, and directed that the cost of the necessary lands and the laying out, making, and grading of the roadway should be paid for by an assessment upon the lands upon either side of the avenue or roadway, were considered by the court, and it was held that the act was unconstitutional, because the paying of the award for the lands was limited to a certain source, namely, the local assessment.

Under the provisions of the act in question, and without going into detail, it is provided, in substance, that the lands of the defendant may be acquired by condemnation proceedings as for the public use. The only manner provided by which the defendant can receive the amount of such award is by waiting until a sum is accumulated resulting from assessments made upon the property which it is assumed will be benefited by the improvement. Whether such sum will ever be thus created and accumulated is purely problematical. Such assessment for supposed benefits may, be contested by any one thus assessed, and whether such assessment may finally contribute to the fund out of which the defendant and others similarly situated are to be paid is purely problematical. So far as I can discover by the act, no political division of the state is obligated to pay to the defendant the amount which may be awarded to him for the land taken from him. Ordinarily, in condemnation proceedings, where an award is made, the landowner is entitled to accept the same, and to demand the payment of the award thus made to him. In the case at bar no such right exists; but the landowner must wait for the payment of the award made to him until such time as a fund is created adequate and sufficient to pay the amount of his award, and, under the provisions of the act, it is quite possible to conceive that such fund may be decreased indefinitely without any act or fault on the part of a particular landowner. In the case at bar, suppose that the defendant is awarded a certain sum as the value of his property taken from him by virtue of the power of eminent domain. Is there any provision of the act which enables him to recover that exact amount, either at present or at any time in the future? Certainly not at the present time, because the fund out of which he is to be paid cannot be determined until the amount of his award and the damages to be paid to all others similarly situated can be ascertained, and then the scheme is when the amount of the damages to be paid to the landowners is determined to assess the cost upon the property owners to be benefited, which assessment, as I have suggested, may be contested by any one of such supposed beneficiaries. So that the compensation to be paid to him for his property is not sure, but is uncertain in the extreme and in every aspect of the case.

It is suggested that by the provisions of the act the property of the defendant and of others similarly situated cannot be actually acquired

or entered upon until the compensation awarded is paid.   Such is undoubtedly the correct construction of the statute, but I think that it does not aid the plaintiff's contention in support of the constitutionality of the act, because by the institution of such condemnation pro- ceedings, and by the award made, a cloud is placed upon the title to defendant's property which may be serious in the extreme.   It may be such as to prevent him from selling or disposing of the same, because, as I have pointed out, it cannot be determined in advance whether or not the property so condemned is eventually to be taken, because it cannot be known that a fund will be created sufficient to pay the award.

I think the conclusion is irresistible that the act in question is unconstitutional, in that it authorizes condemnation proceedings to take the property of the defendant and others similarly situated under the power of eminent domain without obligating any political division of the state to pay the sum awarded for the property so taken by such condemnation proceedings.   Undoubtedly the Legislature could have created a tax district and made it responsible for the payment of any award made to an individual whose property was taken.   But in the case at bar no such provision is made.   No town, particular locality, or other political division of the state, or the state itself, is obligated to pay the award which may be made to the defendant or others similarly situated for the property taken and necessary to consummate the scheme and purpose of the statute.   The defendant and all others similarly situated are relegated to be paid out of funds to be created by the plaintiff in the manner prescribed by the statute and every item of which may be contested by those from whom such fund may be sought to be collected.

I conclude that, in the respect indicated, the act is unconstitutional and void, and that plaintiff is not entitled to exercise the right of eminent domain as against the defendant or others similarly situated.