*229
 
 Mr. Justice Glieeokd
 

 delivered the opinion of the court:
 

 Private property, the Constitution provides, shall not be taken for public use without just compensation, and it is clear that there are few safeguards ordained in the fundamental law against oppression and the exercise of arbitrary power of more ancient origin or of greater value to the citizen, as the provision for compensation, except in certain extreme cases, is a condition precedent annexed to the right of the Government to deprive the owner of his property without his consent. — (2 Kent Com., 11th ed., 339; 2 Story on Const-., 3d ed., 59C.)
 

 Extraordinary and unforeseen occasions arise, however, beyond all doubt, in cases of extreme necessity in time of war or of immediate and impending public danger, in which private property may be impressed into the public service or may be seized and appropriated to the public use, or may even be destroyed, without the consent of the owner.
 

 Unquestionably such extreme cases may arise, as where the property taken is imperatively necessary in time of war to construct defences for the preservation of a military post at the moment of an impending attack by the enemy, or for food or medicine for a sick and famishing army utterly destitute and without other means of such supplies, or to transport troops, munitions of war, or clothing to re-enforce or supply an army in a distant field, where the necessity for such re-enforcement or supplies is extreme and imperative, to enable those in command of the post to maintain their position or to repel an impending-attack, provided ‘it appears that other means of transportation could not be obtained and that the transports impressed for the purpose were imperatively required for such immediate use.
 

 Where such au~ extraordinary and unforeseen emergency occurs in the public service in time of war no doubt is entertained.that the power of the Government is ample to supply for the moment the public wants in that way to the extent of the immediate public exigency, but the public danger must be immediate, imminent, and impending, and the emergency in the public service must be extreme and imperative and such as will not admit of delay or a resort to any other source of supply, and the circumstances must be such as imperatively require the exercise of that extreme power in respect to the particular property so impressed, appropriated, or destroyed.
 

 
 *230
 
 Exigencies of the kind do arise in time of war or impending public danger, but it is the emergency, as was said by a great magistrate, that gives the right, and it is clear that the emergency must be shown to exist before the taking can be justified. Such a justification may be shown, and when shown the rule is well settled that the officer taking private property for such a purpose, if the emergency is fully proved, is not a trespasser, and that the Government is bound to make full compensation to the
 
 owner.
 
 — (Mitchell v.
 
 Harmony,
 
 13 How., 134.)
 

 Three steamboats owned by the appellee during the rebellion were employed as transports in the public service for the respective periods mentioned in the record, without any agreement fixing the compensation to which the owner should be entitled. Certain payments for the services were made in each case by the Government to the owner,
 
 bat
 
 he
 
 claimed
 
 a larger sum, and the demand being refused, he instituted the present suit.
 

 Prior to the orders hereinafter mentioned the steamboats were employed by the owner in carrying private freights, and the findings of the court below show that he quit that employment in each case and went into the public service in obedience to the military order of an assistant quartermaster of the Army. Beference to one of the orders will be sufficient, as the others are not substantially different. Take the second, for example, which reads as follows, as reported in the transcript: “ Imperative military necessity requires the services.of your steamer for a brief period; your captain will report at this office at once in person, first stopping the receipt of freight, should the steamer be so doing.”
 

 Pursuant to that order, or one of similar import in substance and effect, the respective steamboats were impressed into the public service and employed as transports for carrying Government freight for the several periods of time set forth in the findings of the court. Throughout the whole time the steamboats were so employed in the military service they were in command of the owner as master, or of some one employed by him and under his pay and control, and the findings of the court show that he manned and victualed the steamboats and paid all the running expenses during the whole period they were so employed. Unexplained and uncontradicted the findings of
 
 *231
 
 tbe court show, a state of facts which plainly lead to the conclusion that the emergency was such that it justified the officers in each case in ordering the steamboat into the service of the United States, as the orders purport to have been issued from an imperative military necessity; and if so, they show beyond all doubt that the officers who issued them were not trespassers, and that the Government of the United States is bound to make full compensation to the owner for the services rendered.
 

 Such a taking of private property by the Government, when the emergency of the public service in time of war or impending public danger is too urgent to admit of delay, is everywhere regarded as justified, if the necessity for the use of the property is imperative and immediate, and the danger, as heretofore described, is impending, and it is equally clear that the taking of such property under such circumstances creates an obligation on the part of the Government to re-imburse the owner to the full value of the service. Private rights, under such extreme and imperious circumstances, must give way for the time to the public good, but the Government must make full restitution for the sacrifice.
 

 Beyond doubt such an obligation raises an implied promise on the part of the United States to re-imburse the owner for the use of the steamboats and for his own services and expenses, and for the services of the crews during the period the steamboats were employed in transporting Government freight pursuant to those orders.
 
 Indebitatus assumpsit
 
 is founded upon what the law terms an implied j>romise on the part of the defendant to pay what, in good conscience, he is bound to pay to the plaintiff; but the law will not imply a promise to pay unless some duty creates such an obligation, and it never will-sustain any such implication in a case where the act of payment would be contrary to duty or contrary to
 
 law.
 
 — (Curtis v.
 
 Fiedler, 2
 
 Black, 478.)
 

 Tested by those rules it is quite clear that the obligation in this case to re-imburse the owner of the steamboats was of a character to raise an implied promise on the part of the United States to pay a reasonable compensation for the service rendered; and if so, then it follows that the decree was properly made in favor of the jdaintiff', unless it appears that the adjustment of the claim belonged to Congress or to the executive department, and not to the Court of Claims.
 

 
 *232
 
 Jurisdiction is vested in the Court of Claims, by the act of Congress establishing the court, to hear and determine all claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, which may be suggested to it by a petition regularly filed in the court.— (10 Stat. L., 012.)
 

 Express authority, therefore, is given to the court by that act to hear and determine claims founded upon a contract with the Government of the United States, whether express or implied. Claims of the kind before the court would certainly be within the jurisdiction of that court were it not that Congress bas passed a later act restricting to some extent the j urisdiction conferred by that provision. By the
 
 Act 4th July,
 
 1884, it is provided that the jurisdiction of the Court of Claims shall not extend to or include any claim against the United States growing out of the destruction or appropriation of, or damage to, property by the Army or Navy, or any part of the Army or Navy, engaged in the suppression of the rebellion, from the commencement thereof to the close. — (13 Stat. L., 381.)
 

 Special reference is made in behalf of the appellants to that provision, and the argument is that it is decisive to show that the decree in this case is erroneous. Support to that proposition is chiefly drawn from the signification attributed to the word “ appropriation,” and from certain remarks of this court in one of its recent
 
 decisions.
 
 — (Filor
 
 et al.,
 
 v.
 
 United States, 9
 
 Wall., 48.)
 

 Those remarks were made in respect to a claim where a military order was issued for the seizure of certain real estate for the purpose of compelling a lease of the premises, and the findings of the court show that the agreement for the lease was concluded under the pressure of that order. Apart from that it also appeared that the premises belonged to an insurgent in the rebel army, and the Court of Claims also found that the contract was void on that account.
 

 Applied as those remarks must be to the case then under consideration no doubt is entertained that they were correct, but they cannot be applied to the case before the court, as the conclusion to which they would tend would contradict the finding of the court below in matters of fact, which cannot be reviewed in this court.
 

 
 *233
 
 Briefly stated tbe findings of tlie court in that behalf are as follows: That the military officers did not intend to appropriate the steamboats to the United States, nor even their services; that they did intend to compel the masters and crews, with the steamers, to perform the services needed, and that the United States should, pay a reasonable compensation for such services, and that such was the understanding of the owner; that the steamers, as soon as the services for which they were required had been performed, were returned to the exclusive possession and control of the owner.
 

 They were equipped, victualed, and manned by the owner, and he, or persons by him appointed, continued in their command throughout the entire period of the service. He yielded at once to the military order and entered into the service of the Government, and the court here fully concur with the Court of Claims that there was not such an appropriation of the steamboats or of the services of the masters and crews as prohibited the court below from taking jurisdiction of the case. On the contrary the court is of the opinion that the findings of the Court of Claims show that the employment and use of the steamboats were such as raise an implied promise on the part of the United States to re-imburse the owner for the services rendered and the expenses incurred, as allowed by the Court of Claims.
 

 Valuable services, it is conceded, were rendered by the appellee, and it is not pretended that the amount • allowed is excessive. Neither of the steamers was destroyed nor is anything claimed as damages, and inasmuch as the findings show that an appropriation of the.steamers was not intended and that both parties understood that a reasonable compensation for the services was to be paid by the United States, the court is of the opinion that the objection to the jurisdiction of „the Court of Claims cannot be sustained, as the claim is not for “ the destruction or appropriation of, or damage to, property by the Army or Navy, or any part of the Army or Navy, engaged in the suppression of the rebellion.”
 

 Viewed in that light the case is free of all difficulty, as the jurisdiction of the court, by the express words of the act of Congress, extends to claims founded upon an implied contract as well as upon that which is express.
 

 Certain other acts of Congress have been passed in respect to
 
 *234
 
 property impressed or employed in the suppression of tine rebellion, but it is not necessary to refer to them, as they have no application to any question presented in this record.
 

 Decree affirmed.