Dayis, J.,
delivered the opinion of the court:
Wheu General Price invaded Missouri in the autumn of 1864, General Rosecrans, commanding the United States forces in that State, called out the enrolled militia, an organization existing under State authority, and directed Colonel Gale, of the Fiity-fourth Militia Regiment, to take command of that and the Fifty-fifth Regiment, and to summon for duty all able-bodied arms-bearing men in Franklin County' between the ages of eighteen and forty-five years. Acting upon information given him by' General Rosecrans and by his orders, Colonel Gale immediately took charge of two steamers belonging to claimant, then at Washington, Mo., and used them during ten days for the transportation of troops and the removal of property, including munitions of war, and the safe and papers of the United States internal-revenue collector. Payment for the use of these boats is pray ed in this action.
*178 It is contended by the defendants that “there was an appropriation of the steamboats mentioned, or of their services, within the meaning of the first section of the Act 4th July, 1864 (13 Stat. L., 381), or, if not an appropriation, that there was an impressment of the boats within the meaning of the Joint Resolution 23d December, 1869 (16 Stat. L., 368),” and that this court is without jurisdiction in the premises. We are referred to the case of Kimball, reported in 13 Wallace (p. 636), as supporting this view, while the claimant relies upon the case of Bussell in the same volume (p. 623).
In Kimball’s Case the vessel was under contract to carry a cargo to Port Koyal. Upon her arrival there she was ordered to Key West; the master protested, at first refused to go, and was told that if he did not comply with the order he would be taken out of the vessel and another master sent in command ; he requested delay, which was refused, and he was finally forced to put to sea-. In complying with these peremptory orders his vessel struck on the bar and was seriously damaged.
In Bussell’s Case the owners were notified that imperative military necessity required the services of the steamers; that the receipt of freight should be stopped, and the captain should report to the quartermaster. The steamers were equipped, victualed, and manned by the owners, to whom they were returned after the services for which they were required had been performed. The seizure being justified by military necessity, the court held that the facts showed not an appropriation by the authorities, but rather such use of the steamboats as raised an implied promise on the part of the United States to reimburse the owners for the services rendered and the expenses incurred.
In the case at bar Colonel Gale does not seem to have intended an appropriation of the boats. The pressing military necessity caused by the approach of Price’s troops forced him to remove his command, together with Government and State property, with the utmost dispatch. These boats being-available, he took charge of them for that purpose, without objection on the part of the owners, and after the service for which they were needed had been performed, they were returned to the owner’s exclusive control. During this service *179 the captains and crews of the boats remained at their posts as usual and were paid and subsisted by the owners.
An imperative necessity for the instant use of the boats existed ; the services required for the public good were willingly performed at the expense of the claimant. We therefore conclude that the facts bring this case within the principle announced in that of Eussell, and that the one party did not intend nor did the other believe there was such a seizure of the vessels as amounted to an appropriation of them by the United States.
The “ taking of private property by the Government when the emergency of the public service, in time of war or impending public danger, is too urgent to admit of delay, is everywhere regarded as justified, if the necessity for the use of the property is imperative and immediate and the danger as heretofore described is impending; and it is equally clear that the taking of such property under such circumstances creates an obligation on the part of the Government to reimburse the owner to the full value of the service. Private rights under such extreme and imperious circumstances must give way for the time to the public good, but the Government must make full restitution for the sacrifice.” [Russell v. The United States, 13 Wall., 629.)
It is further objected that the service performed was not for the United States. The findings show that while Colonel Gale was a militia officer, he was at the time in question acting under the direction of General Eosecrans. That what he did was by order of a United States officer for Federal and not for State purposes, and that the entire expense of calling out these troops was ultimately paid by the United States. The property transported was military stores, issued by the chief commissary of subsistence of the United States in Missouri, and the boats also transported Government property saved from the office of the internal-revenue collector. Under all these circumstances we are of the opinion that the boats were used for the United States, “ under the emergency of the public service in time of war,” in such manner as to create “an obligation on the part of the Government to reimburse the owners to the full value of the service.” Judgment for claimant in the sum of $1,000.