WeldoN, J.,
delivered the opinion of the court:
The claim in this proceeding was referred to this court by the Committee on "W ar Claims of the House of Representatives on January 9, 1900, pursuant to the provisions of the act of March 3,1883, commontyknown as the “Bowman Act.”
In substance the petition alleges, and the proof tends to show, that in June, 1863, the petitioner was the owner of two steamboats called the Sam Young and the City of Madison, then in use by him on the Ohio and Mississippi rivers; that said steamboats were impressed into the military service of the United States by the assistant quartermaster; that the officer issued certain orders or vouchers for payment of the *50 service of the vessels so impressed, which orders or vouchers were duty approved and paid only in part; that prior thereto up to Juno 1, 1863, petitioner was paid for each vessel respectively — that is to say, for the Sam Young and the City of Madison — the sums of $150 and $250 per dajr, and that vouchers for such payment were issued by the proper officers. That on July 6, 1861, vouchers were issued to petitioner as follows: For services of steamboat Sam Young as transport from June 1,1863, to June 30,1863, inclusive, 30 days, at $150 per day, making $4,500; for services of steamboat City of Madison as transport June 1 to June 30,1863, 30 days, at $250 per day, the sum of $1,500. Each of said vouchers were certified to by the assistant quartermaster on the day of. the issue thereof, were approved by the major-general commanding-, and on the 15th of August approved by the assistant quartermaster, depot quartermaster, as provided by the regulations. That thereafter indorsement was placed upon said vouchers by the assistant quartermaster, by virtue of which the amount stated therein was changed, the sum of $4,500 to $3,600 in the case of the Sam Young, and from $1,500 to $5,100 in the case of the City of Madison, and the last amounts were paid petitioner. Petitioner protested against such deductions at the time they were made, but on September 21, 1863, presented such vouchers to distributing assistant quartermaster at St. Louis and received payment in accordance with said indorsements, to wit, the sums of $3,600 and $5,100, respectivety, making a difference between the original amounts in the vouchers and the payment after deduction of the sum of $2,100.
The attorney for the defendants insists that b}'- the provisions of the statute under which the claim was transmitted the court has no jurisdiction to find the facts. The second paragraph of the third section of the Bowman Act provides: “ Nor shall the said court have jurisdiction of any claim against the United States which is now barred by virtue of anjr provision of any law of the United States.” It is insisted that at the time of the deduction and payment of the sum allowed the Court of Claims had jurisdition to hear and determine the subject-matter of the deduction, and that therefore it comes within that clause of the Bowman Act which prohibits the court from taking jurisdiction of any claim barred by the pro *51 visions of any law of the United States. We think the contention of defendants’ counsel is well founded, and that the claimant had an adequate remedj1' by bringing a suit in this ■court to litigate whatever claim he might have had of the character described in the petition.
This court has uniformly held, concerning cases coming within its general jurisdiction, that if they were barred by the statute of limitations on the 3d of March, 1883, when the Bowman Act took effect, they come within the bar of that statute.
The vessels were not taken from the possession of the claimant, but continued in his possession, subject to the impressment of the defendants in their use for military purposes.
In the case of Bussell against the United States (13 Wall., 623), in affirmation of the decision of this court, the Supreme Court in substance, as shown by the syllabus, says:
“ Where, during the rebellion, military officers compel the owner of a steamboat to place her in the Government service, they not intending to appropriate her or her services, he yielding to the order, retaining. command of his vessel and defraying her expenses, it being mutually understood that a reasonable compensation shall be paid, and the steamboat Being fully released to the owner as soon as the service is performed, she must be deemed to have been employed under an implied contract, and not to have been ‘ appropriated by the Army ’ within the meaning of the act 4th July, 1864 (13 Stat. L., p. 381).”
The claim of the petitioner was presented to the proper-department and disallowed.
The claim is res judicata in the Department, as conceded bj- the argument of the counsel for claimant, and therefore it does not come within the case of Balmer (26 C. Cls. R., 82), in which it is in substance held that if the claim can be settled, paid, or adjudicated by any officer, department, or tribunal it is not barred under the Bowman Act. This case does not present that condition, and is not therefore within the letter ■or spirit of that decision.
In the case of Kimball v. United States (5 C. Cls. R., 253), it is in substance decided, as shown by the syllabus, that “ where a vessel which had gone to a Southern port during the rebellion with a cargo for the Government is compelled *52 under protest by a quartermaster to proceed to another port, but is not seized nor taken from the possession of the master and crew, she is £ ionjpressed ’ into the military service within the meaning of acts 3d March, 1849, and 3d March, 1863 (9 Stat. L., p. 414; 12 id., p. 736), and is not 1 appropriated,' within the meaning of the act 4th July, 1864 (13 Stat. L., p. 381). An injury sulfered by reason of the impressment is not ‘ dm flag o' done by the Army within the meaning of the last act. ”
Applying the law of those cases to this proceeding, the objection of the defendants to the jurisdiction of the court under the present reference must be sustained, and the petition be dismissed for want of jurisdiction.