ROCKAWAY PACIFIC CORPORATION v. STOTESBURY et al.

(District Court, N. D. New York. April 4, 1917.)

1. COURTS  ⊂⊃303(2)—UNCONSTITUTIONAL STATUTES—"SUIT AGAINST STATE."

An unconstitutional statute is to be regarded as nonexistent, and no defense to state officers acting under it; so a suit to enjoin state officers from acting under such an invalid statute is not a suit against the state, which, under Const. Amend. 11, cannot be maintained in the federal courts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suit Against the State.]

2. STATES  ⊂⊃132—APPROPRIATIONS—"DEBTS OF STATE."

Laws making annual appropriations do not and cannot create debts of the state, within Const. N. Y. art. 7, § 4, being only effective against funds at the disposal of the Legislature.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Debt of State.]

3. COURTS  ⊂⊃366(1)—PRECEDENCE—STATE DECISION.

The federal courts are bound to follow the decisions of the highest court of a state construing its Constitution and laws.

4. CONSTITUTIONAL LAW  ⊂⊃280—EMINENT DOMAIN  ⊂⊃71—TAKING OF PROPERTY—COMPENSATION—DUE PROCESS.

Laws N. Y. 1917, c. 13 (Consol. Laws, c. 57, art. 4A), providing a method of condemning premises which are in the judgment of the Governor necessary for public defense, section 59b of which provides that, if the commission created be unable to agree as to compensation, proceedings shall be brought before the Court of Claims, held, in view of Const. N. Y. art. 3, § 21, and article 7, §§ 2–4, to be invalid under article 1, § 6, and Const. U. S. Amend. 14, respectively prohibiting the taking of private property for public use without just compensation, and the taking of property, etc., without due process of law, unless Act 1917 be accompanied with an appropriation by the Legislature sufficient to cover any damages which a property owner may suffer.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. EMINENT DOMAIN ⟨⟫274(4)—TAKING OF PROPERTY—INJUNCTION—EMERGENCY.

 Where the owner of land, which the state sought to condemn for purposes of defense, consented to the state's taking possession of the same, and temporary fortifications were being erected, there is no such emergency as will preclude an injunction preventing final passage of title unless compensation be secured.

6. EMINENT DOMAIN ⟨⟫18—PURPOSE OF TAKING BY STATE—USE OF UNITED STATES.

 Laws N. Y. 1917, c. 13, providing for condemnation of private property for public defense, is not invalid because of a provision that property condemned might be turned over to the federal government, even though the state cannot authorize the exercise of eminent domain, except for the use of its own sovereignty, and the federal government in the exercise of its distinct sovereignty may condemn property needed.

 Hough, Circuit Judge, dissenting in part.

In Equity. Bill by the Rockaway Pacific Corporation against Louis W. Stotesbury and others, individually, and purporting to act as a commission under the pretended authority of Laws N. Y. 1917, c. 13, and purporting to act, respectively, as Adjutant General, State Engineer, and Superintendent of Public Works, under the pretended authority of said act. On motion for interlocutory injunction. Motion granted.

 This is a motion heard before three judges in accordance with the provisions of section 266 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. § 1243]), for an interlocutory injunction restraining the defendants from proceeding as a commission under chapter 13, Laws of 1917 of the State of New York, to condemn certain premises belonging to the complainant upon the ground that the law is unconstitutional.

 The complainant is a corporation of the state of Delaware, and the defendants are citizens of the state of New York, and inhabitants of the county of Albany.

 Gordon M. Buck, of New York City, for complainant.
 Alfred L. Becker, Deputy Atty. Gen., for defendants.

 Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. [1] The defendants make a preliminary objection to the jurisdiction of the court on the ground that the suit is against the state, and therefore not maintainable under the Eleventh Amendment to the Constitution of the United States. It is, however, well settled that an unconstitutional statute is to be regarded as nonexistent and no defense to state officers acting under it. Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447; Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185. We are therefore obliged to consider the objections made by the complainant.

[2-4] Article 1, § 6, of the Constitution of the State of New York, provides, "* * * nor shall private property be taken for public use, without just compensation," and the Fourteenth Amendment to the Constitution of the United States provides, "Nor shall any state deprive any person of life, liberty or property without due process of law."

"The Fourteenth Amendment, it has been held, legitimately operates to extend to the citizens and residents of the states the same protection against arbitrary state legislation, affecting life, liberty, and property, as is offered by the Fifth Amendment against similar legislation by Congress; but that the federal courts ought not to interfere when what is complained of amounts to the enforcement of the laws of a state applicable to all persons in like circumstances and conditions, and that the federal courts should not interfere unless there is some abuse of law amounting to confiscation of property or a deprivation of personal rights, such as existed in the case of Norwood v. Baker, 172 U. S. 269 [19 Sup. Ct. 187, 43 L. Ed. 443]." Hibben v. Smith, 191 U. S. 326, 24 Sup. Ct. 92, 48 L. Ed. 195; French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879.

The question before us is whether the state of New York is proceeding to condemn certain premises belonging to the complainant at Rockaway Point, Long Island, in accordance with the foregoing provisions.

The condemnation proceedings are taken under article 4a, added to the state law (Con. Laws, chap. 57) by chapter 13, Laws of 1917, passed in pursuance of an emergency message from the Governor.

The purpose of the legislation is to regulate the method of condemning premises which are in the judgment of the Governor necessary for public defense. The Adjutant General, State Engineer, and Superintendent of Public Works are constituted the commission to acquire title to such premises. They are directed to make a survey and map thereof; to submit the same, accompanied by certain certificates, to the Governor, and, if approved by him, to file the same in the office of the Secretary of State and in the office of the county clerk of the county in which the premises are situated, and, after service of notice upon the owners or by publication and the performance of certain other prescribed formalities, title to the premises shall vest in the state. Section 59(b) concludes:

"If the commission is unable to agree as to the compensation to be paid for such lands and the structures and waters thereon, the court of claims shall have jurisdiction to determine the amount of such compensation, and upon proceedings being brought before such court as provided by law, an award shall be made of compensation for the lands, structures and waters so appropriated." * * *

The proceedings to be brought before the court of claims, "as provided by law," are evidently those contained in sections 263–281 of the New York Code of Civil Procedure, as amended by chapter 1, Laws of 1915, regulating proceedings in the court of claims, substituted for the former board of claims.

Article 3, § 21, of the Constitution of New York, provides that—

"no money shall ever be paid out of the treasury of this state or any of its funds or any of the funds under its management except in pursuance of an appropriation by law. * * *"

Sections 2 and 3 of article 7 restricted the power of the Legislature to contract debts to a sum not exceeding in the aggregate $1,000,000 at any one time, except to repel invasion, suppress insurrection, or defend the state in war. The creation of all debts exceeding $1,000,000, other than these, must be submitted to the people by referendum Section 4.

Laws making annual appropriations do not and cannot create debts of the state, within article 7, § 4, of the Constitution. They are only effective against funds at the disposal of the Legislature; beyond that they are nullities and create no debt. People v. Board of Supervisors, 52 N. Y. 556. Although that case was decided in 1873, the provisions of the then Constitution of 1846 were in this respect, and in all other respects, considered in this opinion the same as those of the present Constitution of 1894.

Chapter 13, Laws of 1917, goes no further in protection of the landowner than to provide the manner in which the amount of his compensation shall be ascertained. While it is not necessary to ascertain and pay that compensation in advance, there should also be provided a certain and adequate method by which it may be recovered. The right of the citizen to be secured in respect to just compensation for his property taken for public use is as sacred as the right of the sovereign to take it. The sovereign is the whole people of the state, and we believe that all the states of the Union have thought it proper to limit the power of the Legislature to condemn private property for public uses by imposing an express condition that just compensation shall be made. It was not thought sufficient to leave the citizen to the obligation to pay that might be implied by law.

Some decisions of the federal courts are cited but, as we are bound to follow the decisions of the Court of Appeals of the state of New York construing its Constitution and laws, we shall consider those cases only.

In the case of Bloodgood v. Railroad Co., 18 Wend. (N. Y.) 9 (1837), Chancellor Walworth said at page 17 (31 Am. Dec. 313):

"I cannot, however, agree with my learned predecessor in his subsequent reasoning in that case, upon which he afterwards acted in the case of Jerome v. Ross, 7 Johns. Ch. R. 344 [11 Am. Dec. 484], that it is not necessary to the validity of a statute authorizing private property to be taken for the public use that a remedy for obtaining compensation by the owner should be provided. On the contrary, I hold that before the Legislature can authorize the agents of the state and others to enter upon and occupy, or destroy or materially injure, the private property of an individual, except in cases of actual necessity which will not admit of any delay, an adequate and certain remedy must be provided whereby the owner of such property may compel the payment of his damages, or compensation, and that he is not bound to trust to the justice of the government to make provision for such compensation by future legislation. I do not mean to be understood that the Legislature may not authorize a mere entry upon the land of another for the purpose of examination, or of making preliminary surveys, etc., which would otherwise be a technical trespass, but no real injury to the owner of the land, although no previous provision was made by law to compensate the individual for his property if it should afterwards be taken for the public use. But it certainly was not the intention of the framers of the Constitution to authorize the property of a citizen to be taken and actually appropriated to the use of the public, and thus to compel him to trust to the future justice of the Legislature to provide him a compensation therefor. The compensation must be either ascertained and paid to him before his property is thus appropriated, or an appropriate remedy must be provided, and upon an adequate fund, whereby he may obtain such compensation through the medium of the courts of justice, if those whose duty it is to make such compensation refuse to do so. In the ordinary case of lands taken for the making of public highways, or for the use of the state canal, such a remedy is provided; and if the town, county, or

state officers refuse to do their duty in ascertaining, raising, or paying such compensation in the mode prescribed by law, the owner of the property has a remedy by mandamus to compel them to perform their duty. The public purse, or the property of the town or county upon which the assessment is to be made, may justly be considered an adequate fund. He has no such remedy, however, against the Legislature to compel the passage of the necessary laws to ascertain the amount of compensation he is to receive, or the fund out of which he is to be paid."

In People v. Hayden, 6 Hill (N. Y.) 359 (1844), Chief Judge Nelson said at page 361:

"Although it may not be necessary, within the constitutional provision, that the amount of compensation should be actually ascertained and paid before property is thus taken, it is, I apprehend, the settled doctrine even as it respects the state itself, that, at least, certain and ample provision must be first made by law (except in cases of public emergency), so that the owner can coerce payment through the judicial tribunals or otherwise, without any unreasonable or unnecessary delay."

In Sage v. City of Brooklyn, 89 N. Y. 190 (1882), Chief Judge Andrews said at page 196:

"It is so axiomatic that it is laid up as one of the principles of government, that a provision for compensation is an indispensable attendant upon the due and constitutional exercise of the power of depriving an individual of his property under the right of eminent domain. Gardner v. Village of Newburgh, 2 Johns. Ch. 168 [7 Am. Dec. 526]. The courts, in construing the constitutional guaranty, have departed from what may seem its plain and natural meaning, and have held that the payment for property taken in invitum for public use need not be concurrent with the taking, but that it is sufficient if the law authorizing the taking also provides a sure, sufficient, and convenient remedy by which the owner can subsequently coerce payment by legal proceedings. If such provision is not made, then, as was said by Nelson, C. J., 'the law making the appropriation is no better than blank paper.' People ex rel. Utley v. Hayden, 6 Hill, 359. It is, I think, a plain proposition that a law authorizing the taking of a man's land, and remitting him for his sole remedy for compensation to a fund to be obtained by taxation of certain specified lands in a limited district, according to benefits, is not a sure and adequate provision, dependent upon no 'hazard, casualty or contingency whatever,' such as law and justice require to meet the constitutional requirement. The pledge of the faith and credit of the state, or of one of its political divisions, for the payment of the property owner, accompanied with practical and available provisions for securing the application of the public faith and credit to the discharge of the constitutional obligation of payment has been held to be a certain and sufficient remedy within the law."

In Litchfield v. Pond, 186 N. Y. 66, at page 74, 78 N. E. 719 (1906), Judge Werner said, arguendo:

"Such a statute, if intended to authorize the exercise of the right of eminent domain, would be clearly unconstitutional, because it makes no provision for compensation to those whose private property is to be taken for a public use. While payment need not precede the taking the provision for compensation must not only pre-exist, but it must be so definite and certain as to leave nothing open to litigation except the title to the property taken and the amount of damages which the owner may recover. Sweet v. Rechel, 159 U. S. 380, 398 [16 Sup. Ct. 43, 40 L. Ed. 188]; Sage v. City of Brooklyn, 89 N. Y. 189, 195; Matter of Mayor, etc., of N. Y., 99 N. Y. 569, 577 [2 N. E. 642]; Brewster v. Rogers Co., 169 N. Y. 73, 80 [62 N. E. 164, 58 L. R. A. 495]."

As in the state of New York no compensation can be recovered out of the state treasury except by an appropriation law, and as under

chapter 13, Laws of 1917, the owner's title to the premises vested in the state before the ascertainment and payment of compensation, it seems to us quite clear that the law, construed alone, is unconstitutional. It does not comply with the language of Chancellor Walworth in Bloodgood v. R. R. Co., supra, that—

> "An adequate and certain remedy must be provided whereby the owner of such property may compel the payment of his damages, or compensation; and that he is not bound to trust to the justice of the government to make provision for such compensation by future legislation."

It does not comply with the language of Chief Judge Nelson in People v. Hayden, supra, that—

> "The settled doctrine, even as it respects the state itself, that, at least, certain and ample provision must be first made by law (except in cases of public emergency) so that the owner can coerce payment through the judicial tribunals or otherwise, without any unreasonable or unnecessary delay."

It does not comply with the language of Chief Judge Andrews in Sage v. City of Brooklyn, supra, that—

> "The pledge of the faith and credit of the state, or of one of its political divisions, for the payment of the property owner, accompanied with practical and available provisions for securing the application of the public faith and credit to the discharge of the constitutional obligation of payment, has been held to be a certain and sufficient remedy within the law."

It does not comply with the test laid down by Judge Werner in Litchfield v. Pond, supra, that—

> "While payment need not precede the taking, the provision for compensation must not only pre-exist, but it must be so definite and certain as to leave nothing open to litigation except the title to the property taken and the amount of damages which the owner may recover."

We think that, to make chapter 13 of the Laws of 1917 constitutional, it must be accompanied by a law appropriating public funds to pay such an award as the court of claims shall make. The amount of the compensation is a judicial, and not a legislative, question. Still an appropriation law must be passed, because in no other way can compensation be secured in accordance with the provisions of the Constitution and the long-established practice under it.

The necessity of an appropriation act was recognized in this very case, because a bill appropriating $1,000,000, or so much thereof as might be necessary, passed both houses of the Legislature just before the temporary restraining order was granted herein, and the affidavits inform us that a bill has passed the Senate appropriating $2,500,000, or as much thereof as may be necessary, for the same purpose.

The Legislature, by appropriating a sum or so much thereof as may be necessary to pay any award the court of claims shall make, does not limit or define the amount of the recovery. In our opinion, the appropriation should be of such an amount as is quite certain to cover any award that can reasonably be made. It is safer and fairer to the citizen to fix an amount too large than too small. The affidavits of experts submitted on behalf of the complainant go as high as $2,000,000, while the defendants show that the assessment for local

taxation of the whole tract, half as large again as the part sought to be condemned, is but $865,000, and that the vice president of the complainant in a verified return for the purposes of state taxation stated that to be its actual value. This court expresses and has no opinion whatever about the proper amount of compensation, and takes it for granted that the court of claims will determine the value upon proper proofs, unaffected in any way by the amount of the sum appropriated by the Legislature.

[5] No such emergency exists as is excepted in some of the foregoing cases, justifying the commandeering of private property for public use without any proceedings at all. The premises are now, with the owner's consent, in the possession of the state; temporary fortifications are being made. The only existing stay is that title shall not vest in the state until a method for recovering the owner's compensation shall be provided. The Legislature, being now in session, is entirely able to enact an appropriate law.

The interlocutory injunction as prayed for is granted, but upon the enactment of a law appropriating a sum not less than $2,000,000, or so much thereof as may be necessary, it will be vacated.

ROGERS, Circuit Judge. I concur in the foregoing opinion of Judge WARD.

[6] In the earlier years, when the United States desired land within the limits of a state for federal purposes, it was the practice to proceed in a state court and under a state statute. See U. S. v. Dumplin Island, 1 Barb. (N. Y.) 24; Gilmer v. Lime Point, 18 Cal. 229; Burt v. Merchants' Ins. Co., 106 Mass. 356, 8 Am. Rep. 339. But in 1871 the Supreme Court of Michigan, speaking through Judge Cooley, in People ex rel. Trombley v. Humphrey, 23 Mich. 471, 9 Am. Rep. 94, held that the state could not condemn for the federal government. "In the first place," the opinion declared, "there can be no necessity for the exercise of this right by the states for this purpose, for the authority of the nation is ample for the supply of its own needs in this regard under all circumstances. In the second place, the eminent domain in any sovereignty exists only for its own purposes; and to furnish machinery to the general government under, and by means of, which it is to appropriate lands for national objects is not among the ends contemplated in the creation of the state government."

And in 1875 the Supreme Court of the United States in Kohl v. U. S., 91 U. S. 367, 23 L. Ed. 449, in an opinion written by Justice Strong, not only held that the government of the United States had as a sovereign within its sphere the power to appropriate land within a state for its public use, and was not under the necessity of applying to a state government to condemn the property, but the opinion of Judge Cooley in the Trombley Case was expressly approved, as being based on the better reason. In 1914, in State v. Milwaukee, 156 Wis. 549, 146 N. W. 775, the Supreme Court of Wisconsin held that the fact that land sought to be condemned by a city for the improvement of its river harbor was to be conveyed to the United States as a condition of receiving a federal appropriation did not affect the right

of the city to condemn the property. This was upon the theory that the authority of the city or state, such as it is fixed by the law, would be in no wise impaired by the grant. "It is," said the court, "as if the city by the authority of the Legislature of the state should convey to the United States by deed a public highway. This * * * would not make the highway any less a public use, would carry no proprietary interest therein, because the city and the state had none, * * * and would not diminish the city or state authority over it; for, as said before, that is not to be conveyed by deed." The court thought the case readily distinguishable from Trombley v. Humphrey, supra, and that it was rather controlled by the principle of Lancey v. King Co., 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817.

The power to condemn sites for forts, lighthouses, post offices, and custom houses is in the United States, and, when property is needed for the purposes specified, it should not be condemned by the state, as it is not being taken for its public use. In the latest work on this subject, Nichols on Eminent Domain, vol. 1, § 34 (1917), that writer declares:

"It is now, however, generally considered to be the sounder rule that a state cannot authorize the exercise of eminent domain except for the use of its own people, and that consequently state cannot authorize the taking of property within its jurisdiction for the use of the United States in carrying out the public and governmental functions assigned exclusively to the United States by the Constitution."

The Legislature of New York has passed an act, and the Governor has signed it, under which, if requested to do so by any officer or agent of the United States duly authorized, the Governor may execute a deed of the land proposed to be taken, transferring title to the government of the United States, to be used for purposes of defense. The validity of the law is not invalidated by such a provision, in view of the fact that the state of New York is entitled to condemn land for its own public defense, and that this land, if it should thereafter be transferred to the United States, will still be used for the defense of the state. If the state were proposing to condemn a site to be used for a post office or a custom house, I should think the court should deny its power to do so, for plainly it would not be a taking for the use of the state, and therefore be beyond its right. But where it is proposed to take property for public defense, I do not see how the right of the state can be successfully challenged on the ground that under certain conditions the property may be transferred to the United States for the defense of the lives and property of the citizens of the state as well as citizens of the United States.

This leads to a consideration of the right of the owner of the land to compensation. The rule on that subject is stated in Cooley's Constitutional Limitations as follows:

"When the property is taken directly by the state, or by any municipal corporation by state authority, it has been repeatedly held not to be essential to the validity of a law for the exercise of the right of eminent domain

that it should provide for making compensation before the actual appropriation. It is sufficient if provision is made by the law by which the party can obtain compensation, and that an impartial tribunal is provided for assessing it."

And in Crozier v. Krupp, 224 U. S. 291, 32 Sup. Ct. 488, 56 L. Ed. 771 (1911), and in other cases in that court which need not be cited, the doctrine is laid down by the Supreme Court of the United States that compensation for property taken by the government under eminent domain need not necessarily be made in advance, if adequate means be provided for a reasonably just and prompt ascertainment and payment thereof.

The Legislature of New York has passed an act appropriating $1,000,000 or so much of that sum as may be needed to pay for the land it is proposed to condemn. This the Governor has not yet signed. Another bill, we are informed, has passed the Senate, and is awaiting the action of the Assembly, appropriating $2,500,000 for the purpose of providing a fund which may be used in paying for this property. So that at this time no adequate means are provided whereby the owner of the property can be compensated for its taking. Until such means are provided, and reasonable, certain, and adequate provision is made for obtaining compensation, the Constitution protects the owner against the taking of his property.

The Rockaway-Pacific Corporation asks this court to believe that the property which it alleges that the state of New York proposes to take is worth upwards of $2,000,000. It supports this allegation by the affidavits of real estate experts of standing and character. The defendant, however, shows that the complainant in 1915 presented to the taxing officers of the state, upon the sworn affidavit of its official representative, that the entire property (one-half of which is now said to be worth upwards of $2,000,000) was worth the sum of $524,000, and that that was its true value. The plaintiff does not appear in a court of conscience in any too favorable light, asking it to exercise its discretion, and issue an injunction for the protection of the rights, which it now asserts are worth $2,000,000 and upwards. Nevertheless it has rights, and its stockholders have rights, which are not to be prejudiced by the conduct of its official representative. Moreover, the affidavits presented justify this court in seeing that a fund sufficiently large is provided to pay the true value of the land to be taken, whatever it may ultimately be ascertained to be in the tribunals authorized by law for its determination.

It may be conceded that in times of impending public danger, too urgent to admit of delay, private property may be taken for public use before compensation has been secured. But this court is not confronted by such an emergency. The Legislature of New York state is in session. The Senate of New York has passed a bill appropriating $2,000,000, if so much is needed, for the acquisition of this property. The passage of the bill through the Assembly and its signature by the Governor can be only a matter of hours. This is not, therefore, such an emergency as in my opinion justifies the taking without providing

such securities for payment as the law entitles the owners to demand, and the injunction prayed should be granted.

HOUGH, Circuit Judge (dissenting in part). Plaintiff owns a piece of land at Rockaway Point, Queens county, a place within the boundaries of the city of New York. This land for purposes of local taxation, has never been assessed at as much as $900,000, and its assessed value has been reported under oath as its value for purposes of state taxation. Pursuant to chapter 13 of the Laws of 1917, the state of New York (as asserted in the bill) seeks to appropriate by the right of eminent domain about one-half of plaintiff's tract.

The method of procedure (not unfamiliar in this state) consists of filing a description of the land appropriated in the proper record office of Queens county, upon which filing title vests in the state; the statutory commissioners (defendants herein) being called upon, at or after such filing, to come to an agreement with the landowner as to the price to be paid; but, if such agreement cannot be reached, plaintiff is given the right of suing for what is alleged to be the proper value in the court of claims.

The bill alleges that the one-half of plaintiff's tract is worth $2,000,-000, and seeks to enjoin the commissioners from filing the statutory description of the land, because (as is said) the statute under which they intend to act is unconstitutional, i. e., obnoxious to the national Constitution, in that plaintiff is about to be deprived of its property without due process of law, and to the state Constitution, in that private property is to be taken for a public purpose without just compensation.

The application for injunction pendente lite is matter of grace, and rests in the discretion of the court, which is justly influenced by the attitude of any person or party seeking injunctive relief.

The law has long required real property within the boundaries of New York City to be assessed for taxation substantially at its market value, and, for a longer period than the ownership by plaintiff of the land in question, it has been matter of notoriety that the real estate assessments in New York City were invariably very near, and very frequently above, the value of the land obtainable in the open market by an undisputed owner.

The discrepancy between the assessed value and the now asserted value of the land desired by the state is gross. Indeed, the difference between not over $450,000 and $2,000,000 cannot be overcome without imputing ignorance or dishonesty to the assessing officers or unusual exaggeration to the plaintiff's assertion. When it is noted that the assessed value was sworn to as the full value by an officer of plaintiff for the purpose of state taxation, the difficulty of accepting (even tentatively) the position of the plaintiff becomes insurmountable, and deprives the plaintiff of any right of appealing to the court, except such as may be found by necessary and strict adherence to ruling decisions.

Plaintiff invokes both the state and federal Constitution because of one act done, or one omission made, by the state, viz. the Legislature

has either made no appropriation for the payment of such value for plaintiff's land as may be agreed upon or ascertained by the court of claims, or such appropriation, if any, does not exceed $1,000,000.[1]

The proposition is that for the state of New York to take for any public purpose private property without appropriating, sequestering, or otherwise allotting a particular, definite, and sufficient fund, for the payment of what the plaintiff owner asserts his property to be worth, is at one and the same time denying due process of law and just compensation for the property taken.

There is also advanced another proposition depending, not upon the wording of the statute, but upon the alleged reason for its passage. The avowed purpose of taking plaintiff's land is public defense, i. e., the emplacement of guns and the possible construction of forti- fications; but it is alleged and admitted that the state does not intend to procure or place guns itself or itself construct a fort—that is to be done by the nation; but the state takes the land in order to convey the same (some time) to the United States for the purposes just stated.

It is urged that the state of New York cannot exercise its sovereign right of eminent domain for the benefit of another sovereign, i. e., the United States of America.

Considering the last suggestion first, it is not doubted that the state can condemn land for the purposes of its own defense, nor that the United States can do the same thing for the purpose of defending the whole country, including New York. It would seem, therefore, upon reason that New York can also condemn for the purpose of as- sisting in the defense of the United States, because thereby it is de- fending itself. As matter of law there is no difference, in substance, between what was approved of in Matter of United States, 96 N. Y. 227, and the legal result of what is here sought to be accomplished by or through the legislation complained of.

As to the argument that absence of an appropriation, or of an ap- propriation sufficient in plaintiff's opinion, renders action by the state unconstitutional until such sufficient appropriation is made, it may first be noted that it requires, as a prerequisite for the exercise of the undoubted sovereignty of New York, that security be given for the damage about to be inflicted upon private citizens—a security measured not by what the Legislature deems enough, nor (logically) by what some court thinks enough, but by the owner's estimate of the largest price which he may hereafter be able to prove. This nec- essarily follows from the tenor of the bill, which presupposes an ap- propriation of $1,000,000, and the argument would be just the same if there be assumed an existing appropriation which in any substantial amount falls short of $2,000,000 and expenses.

Let it be assumed that due process of law requires that somehow, at some time, compensation be made for property taken for public uses. Monongahela, etc., Co. v. United States, 148 U. S. at 324, 13

---

[1] The bill alleges that an act appropriating $1,000,000 was at the date of verification of bill about to pass; at the time of argument it was admitted by counsel that no such statute had become law.

Sup. Ct. 622, 37 L. Ed. 463. It must be assumed that within limits, and very wide limits, the state may determine whether property is wanted for *public* use. "The necessity or expediency of the appropriation is not a matter for judicial inquiry." Spring Valley Water Works v. Schottler, 110 U. S. at 378, 4 Sup. Ct. 64, 28 L. Ed. 173.

Likewise it is obvious that whether the appropriation here be deemed for the benefit of the state or of the United States, it is not a prerequisite to the exercise of eminent domain (even in matters much less vital than public defense) that compensation be made before possession or even title be taken. Great Falls, etc., Co. v. Garland (C. C.) 25 Fed. 521; Sage v. Brooklyn, 89 N. Y. at 195.

So far as New York is concerned, the most extreme statement of the rule was made (obiter) in Litchfield v. Pond, 186 N. Y. at 74, 78 N. E. 722:

"While payment need not precede the taking, the provision for compensation must not only pre-exist, but it must be so definite and certain as to leave nothing open to litigation except the title to the propery taken and the amount of damages which the owner may recover."

So far as it may be said that the state Constitution must be read in consonance with, and subordination to, the Fourteenth Amendment of the national Constitution, the matter was actually presented in Adirondack Ry. v. New York, 176 U. S. at 349, 20 Sup. Ct. 465, 44 L. Ed. 492, where it was held that, where the state itself took property for its own exclusive and designated purposes—

"Compensation must indeed be made, and inquiry as to its amount in some appropriate way, before some properly constituted tribunal, must be provided for. * * * It is the rule in New York that where this is done, and a certain, definite, and adequate source of payment is provided, compensation need not actually be made in advance of a taking by the state or one of its municipal subdivisions. * * * This act [the Adirondack Park bill] fulfills these requirements, in that the state treasury is the source of payment, and an appropriate mode is designated for the ascertainment of compensation as to owners."

The application at bar then must rest upon the single proposition that the New York rule can only be satisfied by an appropriation before action sufficient in the property owner's opinion.

This puts the state sovereign at a disadvantage as compared even with its municipal subdivisions, for the rule has been held satisfied by the liability of the county of Kings (Matter of Church, 92 N. Y. 1), of the city of Brooklyn (Sage v. Brooklyn, supra), and see Rider v. Stryker, 63 N. Y. 137.

As was said by Andrews, C. J. (in the Sage Case, supra):

"The pledge of the faith and credit of the state, or of one of its political divisions, for the payment of the property owner, accompanied with practical and available provisions for securing the application of the public faith and credit to the discharge of the constitutional obligation of payment, has been held to be a certain and sufficient remedy within the law."

There is just this difference between the faith and credit of a political subdivision of the state and the state itself—the former can be sued as matter of right; the latter cannot without its own permission. Therefore the plaintiff's argument comes to this: That although an

appropriation of this very land for purposes of a park by the city of New York would be sufficient if the faith of the city were pledged for payment (that faith being enforceable by legal proceedings), the faith and credit of the state of New York is not enough, even when the state waives its sovereign privilege and invites action in the court of claims. It seems as if the statement of this doctrine contained its own refutation.

Happily for the country, the proven and notorious circumstances under which this appropriation is sought have been so infrequent that the attention of courts has rarely been called to them; yet the matter has not remained wholly without recognition and comment.

There is an acute and obvious difference between the demands of a sovereign for such civil purposes as may be found in the cases already cited, or the allotment of a fraction of its sovereignty to a railway corporation or city for purposes of business, convenience, or comfort, and the exercise of the highest duty of sovereignty—the preservation of its own existence.

In Bloodgood v. Mohawk, etc., Co., 18 Wend. (N. Y.) at 17, 31 Am. Dec. 313, Chancellor Walworth held that the "agents of the state and others" could not enter upon or occupy—

"the private property of an individual, except in cases of actual necessity, which will not admit of any delay, an adequate and certain remedy must be provided whereby the owner of such property may compel the payment of his damages, or compensation."

But the learned chancellor also said that "the public purse" (18 Wend. p. 18, 31 Am. Dec. 313) might justly be considered "an adequate fund." The difference between a taking by the sovereign for itself and the exercise of delegated authority by some subordinate political entity or private corporation is well considered in Smeaton v. Martin, 57 Wis. 364, 15 N. W. 403 (see, also, Walther v. Warner, 25 Mo. 277, and Covington Short-Route Transfer Ry. Co. v. Piel, 87 Ky. 267, 8 S. W. 449); while the supreme exigencies of war and the legal necessity of yielding thereto are amply commented upon by Clifford, J., in United States v. Russell, 13 Wall. at 627, 20 L. Ed. 474. It was there said that the—

"taking of private property by the government, when the emergency of the public service in time of war or impending public danger is too urgent to admit of delay, is everywhere regarded as justified; * * * and it is equally clear that the taking of such property under such circumstances creates an obligation on the part of the government to reimburse the owner to the full value of the service."

The legislation complained of by this plaintiff was passed under an "emergency message" from the Governor of New York, and as a measure of defense at a time concerning the dangers of which comment would be superfluous.

It is therefore my opinion that this application should be denied for three reasons:

(1) The plaintiff's demand for relief is based upon untrustworthy, if not incredible, assertions of value regarding its property. Such statements do not invite the exercise of discretionary power.

(2) Even if the declared and proven purpose of the state in acquiring plaintiff's property was not public defense in time of pressing danger, the statute complained of does pledge the credit of the state and the public purse to make full reparation to plaintiff. This is enough, even under New York decisions made without any thought of public danger. And

(3) The state has acted in this instance under a power only called into play under the exigency of threatened war. Such power may be exercised without a contemporaneous appropriation, even if it be admitted (as it is not) that the sovereign need ever go so far when taking property for its own sovereign use.

For these reasons I cannot agree with the majority.