58 F.Supp. 222 (1944)
In re MISSISSIPPI VALLEY IRON CO.
No. 10142.
District Court, E. D. Missouri, E. D.
December 11, 1944.
*223 Nagel, Kirby, Orrick & Shepley, Hord W. Hardin, and Frank H. Fisse, all of St. Louis, Mo., for Mississippi Valley Iron Co.
Frank H. Fisse and Daniel Noyes Kirby, both of St. Louis, Mo., for executors of Edward F. Goltra's estate.
Harry C. Barker, of St. Louis, Mo., for trustee Dennis W. Maher.
George O. Durham, of St. Louis, Mo., present attorney for trustee.
Edwards, Metcalfe & Strong, of St. Louis, Mo., for Wheeling Steel Corporation.
Emmet T. Carter, of St. Louis, Mo., for Board of Education of City of St. Louis.
DUNCAN, District Judge.
This controversy arises over the question of allowing damages against the Trustee because of the improper issuing of a preliminary restraining order upon the petition of the Trustee. The Referee denied such damages, and the question is certified to the judge for determination.
The Mississippi Valley Iron Company was adjudged a bankrupt in 1940; a trustee was duly appointed, who took possession of the assets of the bankrupt, including "One Gantry crane type Heyl & Patterson ore-handling bridge, 320 foot span, capacity 10 tons, together with all attachments and appurtenances." In the interest of brevity, the ore-handling bridge will be referred to as the "bridge."
The bridge was constructed by Edward F. Goltra, deceased, out of funds provided for that purpose by the War Department. It was of the movable type constructed on parallel railroad tracks approximately 320 *224 feet apart and was susceptible of being moved along such tracks for use in unloading ore from barges anchored in the Mississippi River.
The estate of Edward F. Goltra and the School Board of the City of St. Louis each made formal claim to the ownership of the bridge. On September 6, 1943, the bridge was requisitioned by the United States Government in the manner hereinafter described. At the time of the requisitioning, the conflicting claims of the above named parties had not been determined by the referee in bankruptcy.
The bridge had not been in use for many years, and several months prior to its requisitioning, Edward F. Goltra, Jr., one of the administrators of the estate of Edward F. Goltra, learned that the Wheeling Steel Corporation of Wheeling, West Virginia was interested in procuring an ore loading bridge and crane. Shortly thereafter negotiations were entered into by the Wheeling Steel Corporation, the Goltra estate, the School Board of the City of St. Louis and the trustee in bankruptcy, for the sale of the bridge.
As a result of those negotiations, a tentative agreement apparently was reached by which the Wheeling Steel Corporation was to pay $100,000 for the bridge, the amount to be paid into the bankruptcy court without prejudice to the rights of any of the parties who claimed it. Some time before the bridge was requisitioned, a stipulation embracing this understanding was signed by the three claimants, but it was never signed by the Wheeling Steel Corporation.
The matter of the existence and availability of the bridge was first brought to the attention of the War Production Board on May 31, 1943, in connection with the expansion of the facilities of the Wheeling Steel Corporation's plant at Steubenville, Ohio, and apparently was under discussion in the various divisions of the War Production Board concerned with the acquisition of property under the War Powers Act, from that time until it was requisitioned on September 6, 1943.
As heretofore stated, the War Department supplied the funds for the construction of the bridge, and although it had never made any claim to the bridgein fact, it had disclaimed any interestyet the question of the possibility of the War Department making a claim arose during the negotiations between the Wheeling Steel Corporation and the claimants, and during discussion with the War Production Board, in Washington. Finally, legal counsel for the Wheeling Steel Corporation advised its client that it could not, in view of the War Department's attitude in the matter, acquire the property by agreement free and clear of any claim the War Department might make with respect to it.
The President, acting through authorized governmental agency, determined:
"* * * that the use of the following property (describing the bridge) is needed for the defense of the United States; that such need is immediate and impending and such as will not admit of delay or resort to any other source of supply; and that all other means of obtaining the use of such property for the defense of the United States upon fair and reasonable terms have been exhausted." Citing Act of October 16, 1941, 55 Stat. 742 as amended March 27, 1942, 50 U.S.C.A.Appendix §§ 721 to 724.
and directed the Metals Reserve Company to requisition the bridge.
On September 6, 1943, the Metals Reserve Company signed and delivered to the United States Marshal for the Eastern District of Missouri, a notice of requisition and ordered him to take possession in the name of the United States. The notice was served on a watchman employed by the trustee, and in charge of the premises of the bankrupt, and of the bridge. Pursuant to the serving of such notice, and in compliance therewith, the United States Marshal took possession of the bridge in the name of the United States and gave a receipt therefor in the name of the United States, and the Metals Reserve Company delivered possession to the Wheeling Steel Corporation.
The Wheeling Steel Corporation entered into a contract with Heyl & Patterson to dismantle the bridge preparatory to its removal to its plant at Steubenville, Ohio.
On October 27, 1943, when the dismantling was begun, the trustee filed with the referee in bankruptcy a petition for injunction alleging inter alia that the Wheeling Steel Corporation in bad faith and with the purpose and intention of securing the possession of the bridge without simultaneously paying the purchase price, had "* * * secretly entered into some scheme or strategem with one Metals Reserve Company, whereby it paid or pretended to pay to the said Metals Reserve *225 Company the said $100,000.00 and the Metals Reserve Company procured certain agents of the United States purporting to act under the war powers of the Government to seize or pretend to seize and requisition the said crane ostensibly for the Government, but in fact for said Metals Reserve Company, or its principal, The Wheeling Steel Corporation."
The trustee further alleged:
"That in carrying out said scheme or strategem the said parties falsely represented that they had exhausted all other means of obtaining the use of such property for the defense of the United States upon fair and reasonable terms, when in truth and fact they had not exhausted such means and, on the contrary, had successfully negotiated with the petitioner, and through him with the others claiming an interest therein, a contract for the purchase of said property at private sale * * *."
The trustee further alleged that:
"* * * in order for the same to become applicable (Act of October 16, 1941) or enforcible in the requisition of any property by the President of the United States, it is necessary for the President of the United States before the taking of any property under said act to use `all other means of obtaining the use of such property for the defense of the United States upon fair and reasonable terms having been exhausted' but that the President and no other party complied with said provision of said Act."
The trustee further alleged that he had not been served with proper notice as required by the law, and that: "* * * all acts taken and things done by the Metals Reserve Company or the War Production Board or the Wheeling Steel Corporation in their attempt to issue and execute a requisition for said crane under said Act are illegal and void, and of no force or effect and not binding on this Court or this Trustee." and prayed for an injunction against the Wheeling Steel Corporation, Heyl & Patterson, its agent, and C. P. Dickey the representative of Heyl & Patterson, to enjoin them from entering upon the premises of the trustee or from dismantling or attempting to dismantle or remove the bridge or any part thereof from the premises.
On the day of the filing of the petition, the referee issued a preliminary restraining order in compliance with the prayer of the petition, which was later dissolved. Following the dissolution of the temporary restraining order, the Wheeling Steel Corporation filed with the referee a petition praying damages against the trustee for alleged additional expenses incurred by it by reason of the delay in dismantling the bridge, due to the improper seeking and granting of the preliminary restraining order. The Trustee filed a motion to dismiss the petition of the Wheeling Steel Corporation for the allowance of damages.
Immediately upon the granting of the preliminary restraining order on October 27 the Metals Reserve Company through the United States District Attorney for the Eastern District of Missouri moved to dissolve the restraining order. From that time until November 6 several "bites" were taken at its disposition.
The Act of October 16, 1941, as amended by the Act of March 27, 1942, 55 Stat. 742, 50 U.S.C.A.Appendix § 721, provides:
"Whenever the President, * * * determines that (1) the use of any military or naval equipment, supplies, or munitions, or component parts thereof, or machinery, tools, or materials necessary for the manufacture, servicing, or operation of such equipment, supplies, or munitions is needed for the defense of the United States; (2) such need is immediate and impending and such as will not admit of delay or resort to any other source of supply; and (3) all other means of obtaining the use of such property for the defense of the United States upon fair and reasonable terms have been exhausted, he is authorized to requisition such property for the defense of the United States upon the payment of fair and just compensation for such property to be determined as hereinafter provided, and to dispose of such property in such manner as he may determine is necessary for the defense of the United States."
Section 724 of the Act, supra, provides that:
"The President may issue such rules and regulations and require such information as may be necessary and proper to carry out the provisions of this Act, and he may exercise any power or authority conferred on him by this Act through such department, agency, board, or officer as he shall direct or appoint. Oct. 16, 1941, c. 445 § 4, 55 Stat. 743."
*226 Pursuant to the authority conferred upon him, the President delegated to the Chairman of the War Production Board, the authority to requisition and dispose of property through certain other agencies of the United States, and the Chairman of the War Production Board was authorized to delegate his power to such agency or agencies as he might determine. Executive Order No. 8942, dated November 19, 1941, 6 Fed.Reg. 5909; Order No. 9024 dated January 16, 1942, 7 Fed.Reg. 329; Order No. 9040 dated January 24, 1942, 7 Fed.Reg. 527; Order amendatory thereof No. 9138 dated April 17, 1942, 7 Fed.Reg. 2909.
The Metals Reserve Company, a public corporation, was organized pursuant to an Act of Congress approved June 25, 1940, 54 Stat. 573, § 5, 15 U.S.C.A. § 606b; 6 Fed.Reg. 2970. The Metals Reserve Company was authorized "* * * to do all things in connection with the buying, selling, producing and manufacturing of strategic and critical materials, and to purchase and procure materials and equipment * * * for the manufacture and production of strategic and critical materials."
The findings by the President of the United States incident to requisitioning property necessary for the conduct of the war are conclusive and the court cannot question the basis for such findings. 50 U.S.C.A.Appendix § 721; In re Inland Waterways, Inc., D.C., 49 F.Supp. 675; In re Spier Aircraft Corporation, D.C., 49 F.Supp. 896; Alpirn v. Huffman, D.C., 49 F.Supp. 337.
The allegation that "* * * `all other means of obtaining the use of such property for the defense of the United States upon fair and reasonable terms having been exhausted' but that the President and no other party complied with said provision of said Act," was a question which had been determined by the agency of the Government duly authorized by the President and was conclusive so far as the bankruptcy court was concerned.
The allegation in the petition that the Wheeling Steel Corporation (not a party to the requisition), and the Metals Reserve Company had entered into some sort of "scheme or strategem" to seize and requisition the crane "ostensibly" for the Government "but in fact for said Metals Reserve Company, or its principal, the Wheeling Steel Corporation," was, of course, not a matter which the bankruptcy court had any right to hear or determine; and was not grounds upon which the trustee could seek, nor the referee grant, a restraining order. The Metals Reserve Company was a duly created agency of the Government, authorized by statute to carry out and perform certain functions with respect to acquiring property on behalf of the Government, and had, pursuant to Executive Order, supra, been delegated as the agency to acquire property for the national defense. I am sure it will not be seriously contended that the bankruptcy court was authorized under the Act to determine the question of the right of the Metals Reserve Company to perform its plain, clear, legal duty under the Act.
The further allegations that:
"* * * all acts taken and things done by the Metals Reserve Company or the War Production Board or the Wheeling Steel Corporation in their attempt to issue and execute a requisition for said crane under said Act are illegal and void and of no force or effect and not binding on this Court or this Trustee" (Emphasis supplied), are very simply disposed of by the Act itself and the Executive Orders issued by the President of the United States determining the method of acquiring private property for the national defense. Briefly stated, they were not questions which could be passed on by the bankruptcy court. Certainly if the courts are to have the right to question the findings of the Executive under the War Powers Act in the matter of acquiring private property for the national defense, the Act will be of little benefit because of delay due to litigation.
The trustee also denied the right of the Government to requisition the property without simultaneously paying the purchase price. Section 721 of the Act, supra, provides a full and complete remedy for arriving at the amount of compensation and the method of its payment. This contention of the trustee was also without merit. Alpirn v. Huffman, D.C., 49 F. Supp. 337.
The last question to be raised by the trustee was the sufficiency of the notice of requisition. The notice was issued by the Metals Reserve Company pursuant to the proper authority, and delivered to the United States Marshal for the Eastern District of Missouri. In the first notice *227 served, a clerical error was made by someone by inserting the name of Edward Duffy, the trustee's watchman, in the blank space where the name of the Marshal should have been inserted. The notice was served by the Marshal on the said Duffy, who was in charge of the premises of the bankrupt and of the bridge.
Later another notice correcting this error was prepared and served, and the trustee immediately filed an amended pleading for restraining order under the new requisition.
It is my view that the first notice was not defective and the serving of amended notice or requisition was entirely unnecessary. The notice was duly issued and properly sent to the United States Marshal. The Marshal served it upon the person in actual physical charge and possession of the property, and pursuant to that notice took possession of the property in the name of the Government of the United States and delivered that possession to the requisitioning authority, the Metals Reserve Company. By that act itself the Government of the United States took possession of the property, the trustee was divested of such title as he possessed, and the title was vested in the Government.
In view of the fact that the property was in the possession of the trustee, and under the jurisdiction of the bankruptcy court, I think it would have been the courteous thing at least, for the Metals Reserve Company to have caused the notice to be served upon the trustee in bankruptcy, or to be filed in the bankruptcy court. It would have contributed very greatly to a more orderly process and a better understanding between agencies of the same government. However, it was not done, and the fact that it was not done created no legal right in the trustee to seek, nor the referee to grant, a restraining order.
The trustee also alleged as one of the grounds for a temporary restraining order, that the parties had agreed upon the purchase price of the crane at private sale. The facts are that the claimants, that is, the trustee in bankruptcy, the School Board of the City of St. Louis and the estate of Edward F. Goltra, as a result of their negotiations with the Wheeling Steel Corporation, had apparently agreed upon the price and the three claimants signed a stipulation, but the stipulation was not signed by the Wheeling Steel Corporation. Even if the stipulation had been signed by all the parties, it would not have been binding upon the Government. Notwithstanding any private agreement among the parties, the right was vested in the Government to requisition the property for war purposes regardless of any agreement between the claimants and the Wheeling Steel Corporation.
The petition of the trustee for a restraining order did not allege any legal grounds upon which a restraining order could be granted. The granting thereof by the referee was improper, and the motion to dissolve was very properly sustained.
Thus having determined that the restraining order was improperly issued and very properly dissolved, we come to the main question certified to the judge of this court for determination. That is, the "* * * correctness of the Referee's order of February 2, 1944, in sustaining the trustee's motion to dismiss the petition of the Wheeling Steel Corporation for damages and the dismissal of the petition of the Wheeling Steel Corporation for damages incurred by reason of the issuance of the temporary injunction; * * *"
After the sustaining of the motion to dissolve by the referee, the motion of the trustee to dismiss the petition of the Wheeling Steel Corporation for damages because of the delay incident to the restraining order was by the referee sustained, and the petition for damages duly dismissed.
As heretofore stated, the trustee's application for injunction was without legal justification and the granting of the restraining order improper but it was grantedand the question now for determination is  shall the referee be upheld in his refusal to allow damages sustained because of the improper granting of such restraining order.
The District Attorney vigorously pressed the matter of the hearing of the motion to dissolve, but numerous delays were occasioned, and the Wheeling Steel Corporation did not enter its appearance until the 4th day of November, two days before the final decision. Witnesses were brought from Washington to testify to the authority of the various agencies involved in the taking of the property. All of which was entirely unnecessary and improper. *228 The authority of the agencies involved was all determined by the War Powers Act and the Executive Orders issued in pursuance thereof. Such authority was not subject to explanation by witnesses, but was a matter of which the referee, the trustee, and all the parties were required to take notice, as urged by the District Attorney at the time of the hearing.
As a result of the granting of the restraining order, the Wheeling Steel Corporation suffered considerable damage. However, I do not believe that the trustee in bankruptcy is liable for such damages, although they were created as a result of his improper seeking, and the improper granting of the restraining order. It is a case of damnum absque injuria.
The duties and responsibilities of a trustee in bankruptcy are defined by Section 47 of the Bankruptcy Act, 11 U.S.C.A. § 75. The bankruptcy court has such jurisdiction as is conferred upon it by the Act, and the powers and the duties of the trustee are likewise fixed by the Act. It is the duty of the trustee to "collect and reduce to money the property of the estate * * * under the direction of the court * * *." He is subject to the orders of the court at all times in the matter of the administration of the assets of a bankrupt. He is an officer of the court.
"But in all he does, he is subject to control of the court because he is administering property which is placed by the act in custodia legis. * * * At the same time, all of his acts relate to administering property in the custody of the court or bringing property into such custody so that it may be there administered. * * *" Imperial Assurance Co. v. Livingston, 8 Cir., 49 F.2d 745, loc. cit. 748, 749, 74 A. L.R. 1336.
The trustee is bound to use due diligence to conserve the assets of the estate, but it is not his duty to defend the possession of the bankrupt property with a cap pistol against a 155 mm. cannon. In respect of such administration he is answerable to the court, and when he makes application to the court for authority to perform some act and authority is granted by the court, the trustee cannot be held liable for the resulting damages.
It is my opinion, as heretofore expressed, that there was absolutely no justification in law, or foundation in fact for the allegations in the trustee's petition upon which the preliminary restraining order was granted. The allegations were principally legal conclusions which immediately vanished by a reading of the War Powers Act and the Executive Orders issued pursuant thereto authorizing the requisitioning of private property for national defense. The referee, the trustee and all parties concerned were presumed to have knowledge of such Act and the Orders issued pursuant thereto.
When the court acted upon the petition and granted the temporary restraining order, it then became the act of the court itself, for which, although an error was committed, no damage could arise. It was the same as any other act of the court where it acted erroneously, the same as the allowance or refusal to allow a claim, or a decision which was erroneous. No responsibility can attach therefor to the trustee in respect of the issuing of an order by the bankruptcy court upon the recommendation, or the request of the trustee.
In view of the foregoing, the Referee's order of February 2, 1944, in sustaining the trustee's motion to dismiss the petition of the Wheeling Steel Corporation for damages and the dismissal of the petition of the Wheeling Steel Corporation for damages incurred by reason of the issuance of the temporary injunction, is found to be correct, and is hereby sustained.